UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
STANDARD INVESTMENT CHARTERED,    x
INC.,                               x     07 Cv. 2014 (SWK)
       Plaintiff          x
                               x
       -against-         x
                               x       **OPINION**
                               x
NATIONAL ASSOCIATION OF         x
SECURITIES DEALERS, INC., et al.,  x
                               x
       Defendants.      x
------------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

    Defendants National Association of Securities Dealers, Inc. ("NASD")[1] and NYSE Group, Inc. ("NYSE"), on behalf of themselves and several individual defendants, seek a protective order preventing plaintiff Standard Investment Chartered, Inc. ("Standard") from disclosing documents that Standard has acquired during expedited discovery. For the reasons that follow, the Court desires additional briefing on the motion.

**I.    BACKGROUND**

    The procedural posture of this case is somewhat complex. The relevant facts are as follows: On March 8, 2007, Standard, a member of the NASD, filed a class action complaint challenging

---

[1] After the close of negotiations, NASD changed its name to the Financial Industry Regulatory Authority, Inc. ("FINRA"). For the sake of convenience, the Court continues to refer to defendants FINRA, Mary L. Schapiro, Richard E. Brueckner, and Barbara Z. Sweeney as the "NASD Defendants," or, for brevity's sake, "NASD."

the then-pending regulatory consolidation of the NASD and the NYSE (the "Consolidation"). Standard alleged that the Consolidation would disenfranchise certain NASD members, and that the defendants failed to comply with Delaware state law while soliciting support for the Consolidation. Against the defendants' wishes, Standard was granted limited expedited discovery in aid of an anticipated motion to preliminarily enjoin the Consolidation. See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers ("Standard I"), 07 Cv. 2014 (SWK), 2007 WL 1121734 (S.D.N.Y. Apr. 11, 2007). Shortly thereafter, however, the Court dismissed Standard's complaint for failure to exhaust administrative remedies before the Securities and Exchange Commission ("SEC"). See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers ("Standard II"), 07 Cv. 2014 (SWK), 2007 WL 1296712 (S.D.N.Y. May 2, 2007).

After the dismissal, the Court directed that "[a]ny party seeking continued protection of documents (or any references to the content of such documents) filed, or sought to be filed, as part of this litigation shall move for a protective order . . . ." See 07 Cv. 2014 (SWK), Dkt. No. 83 (the "May 16 Order"). Defendant NASD made a timely motion for such an order. Standard then filed a motion for reconsideration of the Court's Opinion dismissing its claims. The Court denied Standard's motion for reconsideration on July 13. See Standard Inv. Chartered, Inc. v.

Nat'l Ass'n of Sec. Dealers ("Standard III"), 07 Cv. 2014 (SWK), 2007 WL 2049730 (S.D.N.Y. July 13, 2007).[2] The parties now seek the resolution of NASD's protective order motion.[3]

## II.   DISCUSSION

### A. Rule 26(c)'s "Good Cause" Requirement and the Common Law Presumption of a Public Access

The defendants seek a protective order pursuant to Federal Rule of Civil Procedure 26(c), which provides that, "[u]pon motion by a party or by the person from whom discovery is sought, . . . and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Although the Court has already dismissed Standard's claims, the Court retains jurisdiction to "dispose of material in its files as it thinks appropriate." Gambale v. Deutsche Bank AG, 377 F.3d 133, 139 (2d Cir. 2004); see also id. at 141 ("The court's supervisory power does not disappear

---

[2] Standard has appealed this decision to the Court of Appeals for the Second Circuit.

[3] On July 25, 2007, the Court approved the parties' stipulation to submit additional filings in order to accommodate the defendants' introduction of the Declaration of Todd Diganci in support of NASD's protective order motion. Although Standard labels its filing of July 23, 2007 as an Opposition, see 07 Cv. 2014 (SWK), Dkt. No. 115, the Court refers to that filing as a Surreply in this Opinion. Likewise, NASD's filing of August 6, 2007, which is styled a "Second Reply," see 07 Cv. 2014 (SWK), Dkt. No. 119, is referred to herein as the Response to the Surreply.

because jurisdiction over the relevant controversy has been lost.").

Courts do not generally grant protective orders without a strong showing of "good cause." Wyatt v. Kaplan, 686 F.2d 276, 283 (5th Cir. 1982). The burden of establishing good cause lies with the party seeking the protective order. 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2035 (1970) ("Wright & Miller"); Gambale, 377 F.3d at 142 (quoting In re "Agent Orange" Prod. Liab. Litig., 821 F.2d 139, 145 (2d Cir. 1987)).

Rule 26(c)'s "good cause" analysis is informed by the common law presumption of public access. The Second Circuit has explained this principle as follows:

> The presumption of access is based on the need for federal courts, although independent--indeed, particularly because they are independent--to have a measure of accountability and for the public to have confidence in the administration of justice. . . . Although courts have a number of internal checks, . . . professional and public monitoring is an essential feature of democratic control. . . . Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.

United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Amodeo II").

There is a strong presumption of public access to "judicial documents," or "items filed with the court that are relevant to the performance of the judicial function and useful in the

4

judicial process." <u>See</u> <u>In re Terrorist Attacks on September 11,</u> <u>2001</u>, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (quoting <u>SEC v.</u> <u>TheStreet.com</u>, 273 F.3d 222, 231 (2d Cir. 2001) (internal quotation marks omitted)). "Accordingly, a party seeking a protective order sealing trial, other court hearings, or motions and accompanying exhibits filed with the court must satisfy a more demanding standard of good cause." <u>In re Terrorist Attacks</u>, 454 F. Supp. 2d at 222-23.

Nevertheless, the Second Circuit has also noted that "an abundance of statements and documents generated in federal litigation actually have little or no bearing on the exercise of Article III judicial power. . . . Unlimited access to every item turned up in the course of litigation would be unthinkable." <u>Id.</u> The Second Circuit has indicated, therefore, that courts deciding protective order motions must locate documents on "a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." <u>Id.</u> at 1049:

> Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason. Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach, and stand on a different footing than a motion filed by a party seeking an action by the court, or, indeed, than any

other document which is presented to the court to invoke its powers or affect its decisions.

Id. at 1050 (internal quotation marks, citations, and alterations omitted).

Recently, the Second Circuit has enumerated the steps that a district court must take when deciding whether to issue a protective order. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006). First, a court must determine whether "the documents are indeed 'judicial documents.'" Id. at 119. If the documents are not judicial, then there is no presumption of public access, and the movant need only make a baseline showing of good cause in order to justify the imposition of a protective order. If, on the other hand, the court determines that the documents are judicial in nature, it must next determine the weight of the presumption of access by reference to the "continuum" described in Amodeo II. See id. (quoting Amodeo II, 71 F.3d at 1049). "Finally, after determining the weight of the presumption of access, the court must 'balance competing considerations against it.'" Id. (quoting Amodeo II, 71 F.3d at 1050).

## B. Application of the <u>Lugosch</u> Framework to the Documents at Issue

### 1. Classification of the Documents at Issue as Judicial or "Non-judicial"

Much of the dispute in the instant case involves whether a presumption of public access should attach to the documents obtained by Standard during its limited expedited discovery. More specifically, the parties disagree as to whether those documents are judicial in nature. There are two categories of documents at issue in this case: (1) those that NASD provided to Standard during discovery but that Standard did not file with the Court ("the unfiled documents"), and (2) those that Standard filed (or, with respect to some documents, moved to file) in support of its opposition to NASD's motion to dismiss and its own motion for reconsideration ("the filed documents"). Standard claims that the filed documents are by nature judicial because they were submitted to the Court with various motions. (<u>See</u> Standard's Opp'n 5-6; Standard's Surreply 9-10.) With regard to the unfiled documents, Standard argues that NASD members "have a right to know the content of these documents, and given the public nature of NASD's self-regulatory obligations to its own members and to the public at large, it stands to reason that the public has a great and substantial interest [in disclosure] as well." (Standard's Opp'n 17.) In contrast, NASD contends that (1) there is evidence that Standard intends to publicize the

documents for purposes other than the present litigation (see NASD's Mot. 5); (2) Standard only obtained the documents because it claimed that expedited discovery was necessary to aid in the preparation of a preliminary injunction motion--a motion that was never filed (see NASD's Mot. 6-7); (3) the unfiled documents are not judicial because they were never submitted to the Court (see NASD's Reply 5-6); and (4) the filed documents are not judicial because they are irrelevant to the Court's adjudication of both NASD's motion to dismiss and Standard's motion for reconsideration (see NASD's Mot. 8-10).

Of NASD's numerous arguments, only the last two are relevant at the first step of the Lugosch analysis. The Second Circuit has held that the motive of the party seeking access to, or disclosure of, documents is irrelevant to the question of whether and how strong a public right of access exists with respect to those documents. See Lugosch, 435 F.3d at 123. Additionally, although Standard's long-promised preliminary injunction motion--the impetus for the grant of expedited discovery--is now an impossibility, NASD cites no authority in support of its argument that this change in circumstances requires the return of all discovery documents. Although "[c]ourts are endowed with broad discretion to tailor protective orders to the circumstances of a particular litigation," In re Zyprexa Injunction, 474 F. Supp. 2d 385, 414 (E.D.N.Y. 2007), in

light of the key role that public access plays in enabling the public to monitor the Judiciary, the Court declines to rely on the impossibility of Standard's motion for a preliminary injunction in determining whether a public right of access exists.

### i.   The Unfiled Documents

The Court agrees with NASD that the unfiled documents do not qualify as judicial. The Amodeo II Court stated unequivocally that "[d]ocuments that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach . . . ." 71 F.3d at 1050. Standard acknowledges that many of the discovery documents were never filed but argues that the documents should nonetheless qualify as judicial based on the public's "great and substantial interest" in "NASD's self-regulatory obligations," which "warrants imposing the same burden on NASD to justify keeping such documents confidential as Rule 26 contemplates." (Standard's Opp'n 17.) At the first Lugosch step, however, the Court is only focused on what role the documents played in the underlying litigation. Because the unfiled documents did not in any way figure into the Court's performance of its Article III

functions, the documents do not qualify as judicial and carry no presumption of public access.[4]

### ii.  The Filed Documents

The documents filed with Standard's opposition to NASD's motion to dismiss and its motion for reconsideration present a harder question. Standard cites broad language in Lugosch and subsequent cases, which have held that, for a document to be judicial, "'[i]t is sufficient that the document was submitted to the Court for purposes of seeking or opposing an adjudication.'" (See Standard's Surreply 9 (quoting United States v. Sattar, 471 F. Supp. 2d 380, 385 (S.D.N.Y. 2006)).) NASD argues, in contrast, that the documents are not judicial because they are "necessarily irrelevant" to the Court's dismissal of the litigation and denial of reconsideration.

---

[4] Standard also cites Joy v. North, 692 F.2d 880 (2d Cir. 1982), for the proposition that the sealing of documents pertaining to a corporate entity's obligations to its members is "'wholly unjustifiable.'" (See Standard's Opp'n 1 (quoting Joy, 692 F.2d at 894).) The documents at issue in Joy, however, had already been submitted to the court with a motion for summary judgment. See Joy, 692 F.2d at 894 ("We believe that foreclosing public scrutiny of the grounds for this adjudication is wholly unjustifiable.") (emphasis added). Therefore, although the Joy opinion predates the Second Circuit's formal use of the term "judicial documents," see United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I"), it is entirely consistent with Lugosch's three-step test.  See Joy, 692 F.2d at 893 ("We do not say that every piece of evidence . . . must invariably be subject to public scrutiny. . . . The importance of the material to the adjudication, the damage disclosure might cause, and the public interest in such materials should be taken into account before a seal is imposed.").

(NASD's Resp. to Surreply 4; NASD's Reply 7 ("Here, the documents at issue are legally irrelevant to the question before the Court, and therefore inadmissible.").)

The Lugosch Court stated that "'relevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of public access applies.'" 435 F.3d at 122 (quoting FTC v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 409 (1st Cir. 1987)). In elucidating this standard, the Second Circuit provided several guideposts to facilitate the identification of these documents. First, the ultimate disposition of an underlying motion is inapposite to whether the documents submitted in conjunction with that motion qualify as judicial. See Lugosch, 435 F.3d at 121; see also id. at 122 ("'[I]f . . . there would have been a right of public access had the motion been granted, we fail to see why such a right did not attach merely because the motion was denied.'") (quoting Republic of the Phillipines v. Westinghouse Elec. Corp., 949 F.2d 653, 660 (3d Cir. 1991)). Additionally, at the first step in the Lugosch analysis, the court should assume that the parties "have supported their papers with admissible evidence and non-frivolous arguments." Lugosch, 435 F.3d at 122.

Third, the Second Circuit also stressed that documents should not "receive different weights of presumption based on

the extent to which they were relied upon in resolving the motion," Lugosch, 435 F.3d at 123:

> If the rationale behind access is to allow the public an opportunity to assess the correctness of the judge's decision documents that the judge <u>should</u> have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision. Moreover, once those submissions come to the attention of the district judge, they can fairly be assumed to play a role in the court's deliberations.

<u>Id.</u> (internal quotation marks, citations, and alterations omitted) (emphasis in original); <u>see also</u> <u>Prescient Acquisition Grp., Inc. v. MJ Publ'g Trust</u>, 487 F. Supp. 2d 374, 375-76 (S.D.N.Y. 2007) (categorizing as judicial documents those that "could be relied upon by either party or the court" in deciding the motion or on appeal); <u>Sattar</u>, 471 F. Supp. 2d at 386 ("After <u>Lugosch</u>, it appears that the test focuses not on whether the document was actually used by the court but, rather, on the role the document was intended to play in the exercise of the court's Article III duties."). With these guideposts in mind, the Court now evaluates the extent to which the filed documents are judicial documents subject to the presumption of public access.

### a. Documents Filed in Connection with NASD's Motion to Dismiss

<u>Lugosch</u> definitively reinforced <u>Amodeo II</u>'s ruling that documents submitted in connection with a motion for summary judgment are judicial documents for presumption-of-access

purposes, 435 F.3d at 123, a principle that district courts have faithfully applied. See, e.g., Prescient, 487 F. Supp. 2d at 374; Allen, 420 F. Supp. 2d at 302. Other courts in this Circuit have found the presumption applicable in other contexts, as well. See, e.g., In re San Francisco Chronicle, 07-00256-MISC (TCP), 2007 WL 2713859, at *3 (E.D.N.Y. Sept. 14, 2007) (noting that presumption applies to "search warrant materials after an investigation is over") (citing In re Newsday, Inc., 895 F.2d 74, 76 (2d Cir. 1990)); Sattar, 471 F. Supp. 2d at 386 (holding that letter and report filed in conjunction with defendant's sentencing submission are judicial because they supported her argument at sentencing). It appears, however, that the post-Lugosch status of documents filed in connection with a motion to dismiss is an issue of first impression in this Circuit. The Court must therefore apply the Lugosch framework to this novel situation.

As an intitial matter, the Court concludes that the dismissal of an action is an "adjudication" for presumption-of-access purposes. See Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982) (defining "adjudication" as "a formal act of government"). NASD's motion to dismiss contains four main grounds: lack of subject matter jurisdiction, ripeness, absolute immunity, and failure to state a claim upon which relief can be granted. Lack of subject matter jurisdiction and ripeness are governed by

Federal Rule of Civil Procedure 12(b)(1). See Fed. R. Civ. P. 12(b)(1); Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005) ("Ripeness is a jurisdictional inquiry."). Absolute immunity and the defense of failure to state a claim upon which relief can be granted are governed by Rule 12(b)(6). See Fed. R. Civ. P. 12(b)(6); Scher v. Nat'l Ass'n of Sec. Dealers, Inc., 386 F. Supp. 2d 402, 404 (S.D.N.Y. 2005) (analyzing absolute immunity defense using Rule 12(b)(6)), aff'd 218 Fed. Appx. 46 (2d Cir. 2007). "Motions to dismiss under 12(b)(6) . . . are distinct, procedurally and substantively, from motions to dismiss under 12(b)(1)." Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990). This distinction is relevant to the public's ability to monitor the courts' Article III function, so the Court will analyze each type of motion in turn.

A Rule 12(b)(1) jurisdictional challenge can be facial or factual. Poodry v. Tonawanda Band of Seneca Indians, 85 F.3d 874, 887 n.15 (2d Cir. 1996) (citing Ohio Nat'l, 922 F.2d at 325). A facial challenge attacks "the sufficiency of the jurisdictional facts alleged," Poodry, 85 F.3d at 887 n.15, while a factual challenge challenges the facts themselves. Id. A court resolving a facial challenge must accept the factual allegations of the complaint as true, Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)

(internal citations omitted), but should refrain from drawing inferences favorable to the party asserting jurisdiction, <u>United States ex. rel. Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester County, New York</u>, 495 F. Supp. 2d 375, 378 (S.D.N.Y. 2007). However, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." <u>APWU v. Potter</u>, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation marks, citations, and alterations omitted). In discharging this obligation, "[a] district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." <u>Id.</u> (internal quotation marks and citation omitted).

Applying the principles of <u>Amodeo II</u> and <u>Lugosch</u> to this situation, the Court concludes that documents submitted in connection with a Rule 12(b)(1) motion to dismiss that includes a factual challenge to subject matter jurisdiction qualify as judicial documents because a court could legitimately rely upon them when deciding the motion. Consequently, the public would have an interest in accessing the documents in order to assess the court's decision.

Unlike Rule 12(b)(1), however, Rule 12(b)(6) requires the court to take all factual allegations of the complaint as true. <u>See, e.g.</u>, <u>Stewart v. Jackson & Nash</u>, 976 F.2d 86, 87 (2d Cir.

1992) (citing <u>LaBounty v. Adler</u>, 933 F.2d 121, 123 (2d Cir. 1991)); <u>Ford v. Airline Pilots Ass'n Int'l</u>, 268 F. Supp. 2d 271, 276 n.1 (E.D.N.Y. 2003). Moreover, the court cannot consider evidence outside the pleadings without giving the parties notice and an opportunity to present additional evidence and converting the motion into one for summary judgment. <u>See</u> Fed. R. Civ. P. 12(b).

In light of the foregoing, the Court concludes that documents submitted in connection with a Rule 12(b)(6) motion cannot qualify as judicial. The potentially capacious statements in <u>Lugosch</u> and its progeny must be read within the context of the unique evidentiary constraints imposed by Rule 12(b)(6). Documents submitted with such a motion are, by definition, excluded from the court's purview, and are therefore of no value to someone wishing to evaluate the court's decision. On the other hand, if the court <u>does</u> consider the documents (making the documents necessary for meaningful public monitoring), the motion is no longer a Rule 12(b)(6) motion for dismissal but is now a Rule 56 for summary judgment.[5] Ultimately, because

---

[5] Taking conversion into account does not violate the <u>Lugosch</u> Court's admonition that the outcome of a motion is irrelevant to a document's status as judicial. <u>See Lugosch</u>, 435 F.3d at 121-22. Conversion pertains not to a motion's ultimate disposition but only to the threshold question of what documents (if any) "the judge <u>should</u> have considered or relied upon." <u>Id.</u> at 123 (emphasis in original).

documents submitted with a Rule 12(b)(6) motion can play no role in the court's deliberations absent conversion, the documents cannot qualify as judicial for presumption-of-access purposes.[6]

Turning to the case at hand, NASD based its Rule 12(b)(1) motion on ripeness and exhaustion grounds. Both are jurisdictional issues and enable a court to look beyond the pleadings. See, e.g., Russo v. City of Hartford, 184 F. Supp. 2d 169, 180 (D. Conn. 2002) (stating that motion to dismiss based on failure to exhaust administrative remedies constitutes factual challenge to subject matter jurisdiction warranting examination of evidence beyond pleadings) (citing James W. Moore

---

Additionally, though the public undoubtedly has an interest in ensuring judicial compliance with the conversion rule, disclosing documents simply so that the public can check to make sure that a court did not rely upon them would be unnecessary. If a judge did consider but mistakenly failed to convert the motion to one for summary judgment, this error would likely be evident on the face of the opinion, see, e.g., Fonte v. Bd. of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir. 1988) (noting that district court's "unexplained reference" to factual matters not contained in complaint suggested that court had considered evidence outside pleadings when adjudicating Rule 12(b)(6) motion).

[6] The Fourth Circuit, which has adopted the Second Circuit's standard for defining judicial documents, has reached a similar outcome in at least one case. See In re Policy Mgmt. Sys. Corp., 94-2254, 94-2341, 1995 WL 541623, at *4 (4th Cir. Sep. 13, 1995) (holding that documents filed with Rule 12(b)(6) motion to dismiss are not judicial documents because they "do not play any role in the adjudicative process"). This decision, however, predates Lugosch and implies that a court can take an ex post perspective by looking at what documents a judge actually considered when determining whether they can qualify as judicial. See id. The Court therefore does not rely on In re Policy Management for its conclusions in the instant case.

et al., Moore's Federal Practice ¶ 12.30[4] (3d ed. 2001)); <u>see also</u> <u>Liberty Cable Co. v. City of New York</u>, 893 F. Supp. 191, 198-99, 199 n.11 (S.D.N.Y. 1995) (looking to evidence outside pleadings when disposing of motion to dismiss on ripeness grounds). Any documents submitted by Standard in response to NASD's Rule 12(b)(1) arguments qualify as judicial documents because the Court had discretion to consider them, and therefore they fall within the realm of evidence that the Court potentially "should have considered." <u>Lugosch</u>, 435 F.3d at 123 (emphasis removed).

Standard, however, cited none of the disputed documents in the exhaustion and ripeness sections of its opposition. The only exhibits submitted in opposition to NASD's Rule 12(b)(1) motion are NASD's Proxy Statement, a NASD news release, a New York Superior Court opinion, and a Delaware state court opinion, none

of which is confidential.[7] The assessment of the Rule 12(b)(1) documents therefore ends here.[8]

Standard does cite several of the disputed documents in its opposition to NASD's Rule 12(b)(6) motion. As previously discussed, however, the Court has concluded that documents submitted in connection with a Rule 12(b)(6) motion are not judicial, absent conversion of the motion to summary judgment. In this case, there was no such conversion.[9] Therefore, the documents submitted by Standard in opposition to NASD's Rule 12(b)(6) motion do not qualify as judicial and carry no

---

[7] Despite Standard's dubious, ex post assertion to the contrary, (see Standard's Opp'n 5), the Court cannot conclude that Standard submitted the disputed documents in response to NASD's Rule 12(b)(1) motion. Given Standard's confidence several months ago that "the existing record is more than adequate to support the Court's exercise of jurisdiction," (Standard's Opp'n to NASD's Mot. to Dismiss 7), one would think that Standard would cite to documents in that record when demonstrating that jurisdiction exists. The Court will not permit Standard to take unfair advantage of the common practice of making multiple Rule 12 motions in the same document.

[8] In Prescient Acquisitions Group, Judge Castel held that a document cannot escape classification as judicial simply because no party cited to it in the briefs accompanying a motion. 487 F. Supp. 2d 374, 375-76 (S.D.N.Y. 2007). Prescient, however, is distinguishable from the instant case, because it involved documents submitted in connection with only one motion--a motion for summary judgment--while the instant case actually involves two separate motions with different evidentiary constraints-- motions to dismiss under Rule 12(b)(1) and 12(b)(6). Therefore, in contrast to Prescient, the documents submitted could not be "relied upon by either party or the court," and would not be "deemed fair [or] appropriate for either side to rely upon" on appeal. Id.

[9] The Court did allow limited expedited discovery, but only for the purpose of Standard's anticipated preliminary injunction motion, which was never filed.

presumption of public access.  In summary, none of the documents submitted in connection with NASD's motion to dismiss carry a presumption of public access as judicial documents.

### b. Documents Filed in Connection with Standard's Motion for Reconsideration

As with the Rule 12 motions discussed above, the Court could find no case law in the Second Circuit applying the principles of <u>Amodeo II</u> and <u>Lugosch</u> to documents filed in connection with a motion for reconsideration. Also, like Rule 12 motions to dismiss, motions for reconsideration have unique evidentiary constraints that bear on the Court's <u>Lugosch</u> analysis.

In the Southern District of New York, Local Civil Rule 6.3 governs motions for reconsideration of a court order determining a previous motion. Under this Local Rule, a court may "reevaluate its earlier ruling depending upon 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" <u>Equal Employment Opportunity Comm'n v. Local 638 . . . Local 28 of the Sheet Metal Workers' Int'l Ass'n</u>, 01 Cv. 2877 (RLC), 2001 WL 12007, at *1 (S.D.N.Y. Jan. 2, 2001) (quoting <u>Virgin Atlantic Airways v. Nat'l Mediation Bd.</u>, 956 F.2d 1245, 1255 (2d Cir. 1992)); <u>see also</u> <u>Fisk v. Letterman</u>, 04 Cv. 6972 (VM), 2007 U.S. Dist. LEXIS 60235, at *2-*3 (S.D.N.Y.

Aug. 15, 2007). Nevertheless, as a general proposition, a motion for reconsideration "is not the proper avenue for the submission of new material." Sys. Mgmt. Arts Inc. v. Avesta Technologies, Inc., 106 F. Supp. 2d 519, 521 (S.D.N.Y. 2000) (citing Local Rule 6.3); see also Treppel v. Biovail Corp., 03 Cv. 3002 (PKL), 2005 WL 427538, at *3 (S.D.N.Y. Feb. 22, 2005) ("A party seeking reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings.") (internal quotation marks and citation omitted). In light of these purposes, a party may only submit new evidence in connection with a reconsideration motion with the court's permission. See Local Rule 6.3.[10]

---

[10] Standard and NASD dispute Local Rule 6.3's exact meaning. Standard argues that, because the Rule's text bars only the submission of affidavits without court permission and is silent with regard to actual documentary evidence, submission of such evidence is permissible if it is not accompanied by an affidavit. (See Standard's Opp'n 3 n.2.) The case law interpreting Local Rule 6.3, however, indicates that the regulation of affidavits stems from the prohibition on the submission of new evidence. See, e.g., First Financial Ins. Co. v. Allstate Interior Demolition Corp., 96 Cv. 8243 (RLC), 1998 WL 567900, at *3 (S.D.N.Y. Sept. 3, 1998) ("Because the motion does not afford the losing party the right to submit new evidence to bolster relief, parties are not to submit affidavits in support of a Rule 6.3 motion for reconsideration unless directed by the court.") (internal quotation marks and citation omitted) (emphasis added). Additionally, allowing a party to submit documentary evidence without an accompanying affidavit would allow circumvention of Federal Rule of Evidence 901's

Standard, with the permission of the Court, filed several discovery documents under seal in support of its motion for reconsideration. See May 16 Order; Standard III, 2007 WL 2049730, at *4 n.2. Therefore, any documents that Standard submitted in support of its arguments--arguments that, at this step, the Court must assume to be valid and "non-frivolous," see Lugosch, 435 F.3d at 122--qualify as judicial documents for presumption-of-access purposes, because they are documents that the Court "should have considered" while resolving the motion. See id. at 123 (emphasis removed).

In addition, Standard sought leave to file various discovery documents under seal, including certain NASD documents that, pursuant to a confidentiality agreement, Standard sought to keep hidden from NYSE, despite the fact that those documents might affect NYSE's legal rights (the "NASD-only documents"). See Standard III, 2007 WL 2049730, at *4 n.2. NYSE objected to the inclusion of these documents. Id. The Court indicated that it would only grant Standard leave to amend its motion for reconsideration in order to include the documents if a protective order governing their use was entered. Id.

---

authentication requirement. See Fed. R. Evid. 901(a). Therefore the Court concludes that a party cannot evade Local Rule 6.3's strictures simply by submitting evidence without an accompanying, authenticating affidavit.

Because the parties never proposed a protective order that addressed how the NASD-only documents should be treated, the documents were never filed. As unfiled documents, they do not qualify as judicial and enjoy no presumption of public access. See Amodeo II, 71 F.3d at 1050.[11]

In sum, the Court concludes that the unfiled documents and the documents submitted in connection with NASD's motion to dismiss do not qualify as judicial documents for presumption-of-access purposes. Therefore, NASD must satisfy the baseline standard of good cause in order to justify their continued protection.[12] The documents accepted by the Court in connection with Standard's motion for reconsideration, on the other hand, are judicial, and therefore the Court proceeds to the second step of the Lugosch analysis with respect to those documents.

2. **Weight of the Presumption of Access to the Judicial Documents**

When determining the weight of the presumption of access that applies to a given set of judicial documents, a court must consider "'the role of the material at issue in the exercise of

---

[11] In its denial of Standard's motion for reconsideration, the Court indicated that, because it had "no reason to believe that the remaining NASD-only documents would be relevant to this motion," it "now formally rejects Standard's request to submit the NASD-only documents in its motion for reconsideration." Standard III, 2007 WL 2049730, at *4 n.2. Thus, even if the NASD-only documents did qualify as judicial, the presumption of public access would be nominal.
[12] See infra Part II.B.3.

Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" Lugosch, 435 F.3d at 119 (quoting Amodeo II, 71 F.3d at 1049). Again, the important factor is not whether the court actually relied upon the documents when deciding the documents, but whether the documents were "material" to the court's decision. See In re Zyprexa, 474 F. Supp. 2d at 412 (internal citation omitted). Here, the identification of "material" documents requires specification of the legal arguments that were properly before the Court on Standard's motion for reconsideration. See Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (holding that motion for reconsideration may only be granted if the movant "demonstrate[s] controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision").[13]

Analysis of this kind does not run afoul of the Lugosch Court's statement that the ultimate disposition of a motion is irrelevant to whether documents submitted therewith are

---

[13] The Court is mindful of the Second Circuit's admonition in Lugosch that scrutiny of each argument in a brief can often be "extremely difficult and a waste of judicial resources." Lugosch, 435 F.3d at 123 (internal citation omitted). When determining the weight of the presumption of access for documents submitted with a motion for reconsideration, however, it is essential to identify the arguments that were validly before the court.

judicial. See Lugosch, 435 F.3d at 121-22. In Lugosch, the district court concluded that it could not ascertain the status of discovery documents filed with a summary judgment motion until after disposition because it would not know until then which of several alternative legal arguments would form the basis for its decision. See id. at 116. The Second Circuit rejected this reasoning, holding that documents submitted to support any legal argument legitimately before the court are judicial, regardless of whether the court reaches a particular argument or disposes of the motion on other grounds. See id. at 122. There is a difference, however, between an unreached but nonetheless viable argument and an argument that, by definition, cannot properly be presented in the given motion. In other words, the question is not whether an argument is persuasive, but whether the court can even entertain the argument in the first place. Although a court should assume that each validly presented, alternative ground has the potential to be dispositive, see id., no such assumption applies to arguments the court is jurisdictionally barred from considering. Were the Court to conclude otherwise, parties could simply manufacture a presumption of access for otherwise confidential documents by using them to support obviously irrelevant or nonviable arguments.[14]

_____

[14] Although in practice there is sometimes a point at which the

The Court dismissed Standard's amended complaint on exhaustion grounds. See Standard II, 2007 WL 1296712. In response, Standard produced two valid arguments: first, Standard argued that its proxy claims were not within the scope of the SEC's then-pending review, see Standard III, 2007 WL 2049730, at *2; next, it argued that its "core damages claim" was exempt from exhaustion, see id. at *2-*3. Standard, however, also improperly argued for relief based on new legal theories not presented to the Court in Standard's submissions opposing the underlying motion to dismiss. See id. at *3 (rejecting Standard's breach of fiduciary duty claim), *4 (rejecting Standard's "control premium" claim). Though at least one of these new theories was purportedly based on "newly discovered evidence" (see Standard's Mot. for Recons. 10), the discovery of new evidence does not permit a party to advance a claim in its motion for reconsideration that was not before the court originally. See Fisk, 2007 U.S. Dist. LEXIS 60235, at *4 (noting

line between meritless but properly presented arguments and irrelevant or otherwise nonviable arguments begins to blur, it is the courts' responsibility to maintain this distinction whenever possible. In the context of a motion for reconsideration, a court simply cannot consider arguments that were not before it on the underlying motion. See Fisk, 2007 U.S. Dist. LEXIS 60235, at *4. The public undoubtedly has an interest in evaluating a court's conclusion that a particular argument in a motion for reconsideration is nonviable. The documents submitted in support of that argument, however, are not necessary for the assessment, as the court can determine the viability of the argument based on the parties' characterization of it in their (publicly available) briefs.

that courts should construe Local Rule 6.3 so as to prevent parties from "advanc[ing] different theories not previously argued") (internal citation omitted).

In the instant case, the documents submitted in support of Standard's blatantly invalid arguments (its breach of fiduciary duty and "control premium" claims) enjoy only a nominal presumption of public access. The Court could not consider these arguments when deciding the motion for reconsideration and, consequently, could not consider the documents submitted to support them.

Standard also submitted documents in support of its valid arguments that its proxy claims were not within the scope of SEC review, (<u>see</u> Standard's Mot. for Recons. 4-10), and that its "core damages claim" is exempt from exhaustion (<u>see</u> Standard's Mot. for Recons. 17-23). The Court, however, determined that "all of the documents submitted with [Standard's] motion for reconsideration [are] <u>irrelevant</u> to its exhaustion analysis," the ground on which it had originally dismissed the case. <u>Standard III</u>, 2007 WL 2049730, at *4 n.2 (emphasis added). The documents therefore enjoy only a minimal presumption of public access. <u>Cf.</u> <u>Lugosch</u>, 435 F.3d at 122 (noting presumption of access for "<u>relevant</u> documents" submitted in conjunction with adjudication) (internal quotation marks and citation omitted) (emphasis added); <u>see also</u> <u>Allen</u>, 420 F. Supp. 2d at 302 (noting

that "it is possible that the presumption of access should not apply where a party appends wholly irrelevant material to its summary judgment papers").[15]

Before proceeding to the third step of its analysis (a determination of whether countervailing factors outweigh the presumption of access), the Lugosch Court paused to consider whether a qualified First Amendment presumption of access applied to the documents in question. The Court now follows the same approach.

In addition to the common law presumption of public access discussed to this point, courts have identified a similar presumption stemming from the First Amendment. See, e.g., Lugosch, 435 F.3d at 124; Gambale, 377 F.3d at 140 n.4. In its arguments in opposition to NASD's protective order motion, Standard conflates the two presumptions of access, claiming that NASD must "overcome the commonlaw [sic] right of public access with its First Amendment foundation." (See Standard's Surreply 4 (citing common law and First Amendment precedent in same footnote).)[16] Nevertheless, due to the important constitutional

_____

[15] The Court's conclusion that the documents were irrelevant to the exhaustion issue is distinguishable from Judge Koeltl's conclusion in Sattar that particular documents were relevant but not "useful." See Sattar, 471 F. Supp. 2d at 385.

[16] In its Surreply, Standard also asserts that a party seeking a protective order must submit a detailed affidavit by an affiant with personal knowledge containing line-by-line redactions of the documents at issue and the particular justification for each

principles at stake, the Court construes Standard's argument as a separate assertion of both the common law and the First Amendment presumptions of access with respect to all of the documents. See, e.g., Gambale, 377 F.3d at 141 (recognizing court's role as "primary representative of the public interest" and its duty to determine whether confidential treatment over "records filed wholesale under seal" is warranted) (internal quotation marks and citations omitted); see also Lugosch, 435 F.3d at 124 ("Having concluded that the common law presumption of access exists in this context, we may not avoid the question of whether a First Amendment presumption of access also exists.").

The First Amendment's "qualified right of access to judicial documents" is "a necessary corollary of the capacity to attend the relevant proceedings." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 93 (2d Cir. 2004). Once a court has determined that the First Amendment presumption applies to a particular set of documents, it can only issue a protective order if the moving party satisfies an even more demanding

---

redaction. (See Standard's Surreply 3 (quoting Prescient, 487 F. Supp. 2d at 375).) As NASD correctly recognizes, however, this requirement is not applicable in all protective order motions, but rather stems from an order issued by Judge Castel in a particularly onerous case involving "the sealed filing of submissions, nearly two feet in height, on a pending summary judgment motion." Prescient, 487 F. Supp. 2d at 375. Therefore NASD is not required by law to comply with this procedure, and the Court in its discretion declines to impose it.

standard of good cause than that applicable under the common law presumption of access: When "the more stringent First Amendment framework applies, continued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." Lugosch, 435 F.3d at 124.

In this case, the Court has already determined that the unfiled documents and the documents submitted in connection with NASD's motion to dismiss are not judicial documents. There is thus no First Amendment presumption of access with respect to these documents. Cf. Hartford Courant, 380 F.3d at 93 (recognizing that First Amendment provides "qualified right of access to judicial documents") (emphasis added).

The documents submitted with the Court's permission in support of Standard's motion for reconsideration, in contrast, likely carry a First Amendment presumption of public access, albeit a limited one. These documents are judicial, and, as the Lugosch Court recently reiterated, "access to written documents filed in connection with pretrial motions is particularly important in the situation where no hearing is held and the court's ruling is based solely on the motion papers." Lugosch, 435 F.3d at 124 (quoting In re New York Times Co., 828 F.2d 110, 114 (2d Cir. 1987) (alterations and ellipsis omitted)). Thus,

with respect to these documents, NASD must make a more detailed showing of good cause in order to justify their continued protection.

### 3. NASD's Good Cause Showing

Case law construing Rule 26(c) has established several factors informing that Rule's good cause requirement. First, the movant must submit a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements in order to establish good cause." Wright & Miller at § 2035. "'Ordinarily, good cause for a protective order exists when a party shows that disclosure will result in a clearly defined, specific and serious injury.'" Schiller v. City of New York, 04 Cv. 7922 (KMK) (JCF), 04 Cv. 7921 (KMK) (JCF), 2007 WL 136149, at *5 (S.D.N.Y. Jan. 19, 2007) (quoting In re Terrorist Attacks, 454 F. Supp. 2d at 222 (internal quotation marks, citation, and alterations omitted)). "'Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test. Moreover, the harm must be significant, not a mere trifle.'" Schiller, 2007 WL 136149, at *5 (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)); cf. Allen, 420 F. Supp. 2d at 302 (denying protective order motion based solely on "generalized and unsupported claims of harm that might result

from disclosure"); <u>Melohn v. Schraub</u>, 90 Cv. 4456 (SWK), 1991 WL 33415, at *1 (S.D.N.Y. Mar. 7, 1991) (same).

NASD offers several reasons why a protective order is necessary in this case, including the then-pending negotiations with NYSE; the risk of chilling regulatory and administrative discussions by NASD officials; the need to protect NASD's confidential business information; the fact that Standard has indicated an intention to make the documents public; and the fact that NASD's original disclosure of the documents was in reliance on "the expectation that an appropriate protective order would [eventually] be entered." (<u>See generally</u> NASD's Mot. 3-14.)[17] Although NASD's arguments against disclosure are numerous, they lack sufficient depth for the Court to determine whether disclosure is warranted. For instance, NASD asserts that disclosure of certain documents could "complicate, disrupt, or otherwise harm NASD's relationships with" the SEC, the Internal Revenue Service ("IRS"), and NASD member firms (<u>see, e.g.</u>, NASD's Reply, Declaration of Todd Diganci ("Diganci Decl.") ¶ 16), yet it offers no further explanation of <u>how</u> those relationships will be damaged. Similarly, NASD makes the heavy-handed claim that "[u]nrestricted disclosure could have unintended consequences to the nation's securities markets as

---

[17] NASD has explicitly disclaimed invocation of the deliberative process and self-evaluation privileges. (<u>See</u> NASD's Reply 12-13.)

well" (see Diganci Decl. ¶ 16), but offers no facts in support of that contention.

Because the party seeking a protective order bears the burden of establishing good cause, the Court would normally conclude that NASD has failed to meet its burden and order disclosure of all documents. See, e.g., Schiller, 2007 WL 136149, at *6 (rejecting similar justifications against disclosure as "entirely conclusory" and "formulaic"). In this case, however, a significant portion of the parties' briefings addressed the issue of whether any presumption of access applies to the documents, an issue of first impression that the Court has now decided. Moreover, the NASD-NYSE Consolidation became effective during the briefing schedule, requiring the parties to modify their arguments in their subsequent briefs. Therefore the Court desires additional argument on whether good cause exists to maintain the confidentiality of NASD's documents.[18]

Currently, NASD has sorted the documents at issue into categories, each accompanied by its own justification, but its justifications for each category are at the same level of generality. With respect to the non-judicial documents, NASD must only make a baseline showing of good cause in order to

---

[18] Although time is of the essence when the public right of access is at stake, see Lugosch, 435 F.3d at 126-27, the Court cannot escape the conclusion that a decision on the existing record would be premature.

obtain a protective order.[19]   Cf. In re Terrorist Attacks, 454 F. Supp. 2d at 222-23. For the judicial documents, NASD must make the more detailed showing required by the First Amendment. See Lugosch, 435 F.3d at 120.

In order to encourage the presentation of viable, relevant arguments, the Court preliminarily addresses a few of the claims made in the briefs that the parties have already submitted. First, NASD relies heavily on the risk that disclosure of the documents would threaten its then-pending negotiations with NYSE. This argument is now moot. In its only submission since the end of negotiations, NASD offers passing commentary that, despite the end of the negotiations and the approval of the Consolidation, "it would still be unfair . . . to allow [NYSE] to pick through NASD's negotiating position," and that disclosure could weaken FINRA in "future transactions" with

---

[19] NASD suggests that it should be subject to a diminished good cause requirement because this case "started and ended 'during the pretrial stages of litigation.'" (NASD's Reply 9 (quoting In re Terrorist Attacks, 454 F. Supp. 2d at 222).) In re Terrorist Attacks, however, involved "one of the largest private lawsuits in United States history," and Judge Casey based the use of a more general good cause standard on the ground that a standard any more specific "would impose an enormous burden upon the Court and severely hinder its progress toward resolution of pretrial matters." In re Terrorist Attacks, 454 F. Supp. 2d at 223. Moreover, in contrast to the instant case, the In re Terrorist Attacks Court had not already decided a motion to dismiss and a motion for reconsideration before deciding whether a protective order was necessary. NASD must therefore satisfy the usual standard of good cause and not a more generalized version.

other parties. (NASD's Surreply 6.) In order to justify continued protection, NASD must provide supporting facts and law (if any) to supplement these bare assertions.

Additionally, the Court finds NASD's "reasonable reliance" argument to be without merit. First, the Second Circuit has applied the reasonable reliance principle when parties claim reliance on an already existing protective order. See, e.g., Gambale, 377 F.3d at 142 n.7; TheStreet.com, 273 F.3d at 228; Martindell v. Int'l Telephone & Telegraph Corp., 594 F.2d 291, 296 (2d Cir. 1979). Here, no protective order existed. Furthermore, although NASD produced documents in the expectation that the parties would enter into a confidentiality agreement as directed, this agreement never occurred. Even assuming that reliance on a mere expectation is possible,[20] the Second Circuit has suggested that parties should not rely on "protective orders that are on their face temporary or limited." Gambale, 377 F.3d at 142 n.7 (quoting TheStreet.com, 273 F.3d at 230-31). At least one district court has thus concluded that "there can also be no reasonable reliance upon an expectation that such an order would be entered in the future." Schiller, 2007 WL 136149, at *5 n.3. Here, Standard's proposed confidentiality agreement provided a mechanism to challenge confidentiality designations, (see

---

[20] At least one court has applied a protective order retroactively to documents produced in expectation of such an order. See Allen, 420 F. Supp. 2d at 300.

Standard's Opp'n, Declaration of Richard D. Greenfield ("Greenfield Decl.") ¶ 4 (describing Standard's proposed agreement)), and even NASD's proposed protective order contains a similar provision (see NASD's Mot. 12) ("Any such order should, of course, . . . provide a mechanism to allow the other parties to challenge any designations that they believe to be inappropriate.")). Because there can be no reasonable reliance on such an order, see Lugosch, 435 F.3d at 126, there can be no reasonable reliance on an expectation of its creation. See Schiller, 2007 WL 136149, at *5 n.3. Therefore, on the record currently before the Court, NASD cannot make a showing of reasonable reliance.

Finally, Standard may challenge NASD's forthcoming factual and legal arguments purporting to establish good cause, an opportunity that will also allow it to elaborate on arguments made late in the proceedings. (See, e.g., Standard's Letter Updating Surreply, July 31, 2007, 07 Cv. 2014 (SWK), Dkt. No. 120 ("Standard's July 31 Letter") (arguing that NASD's justifications for protection are moot, and that NASD waived confidentiality of documents by discussing them publicly)).

### C. NYSE's Additional Requests

#### 1. Maintenance of Certain NYSE Documents Under Seal

Included in the documents that Standard submitted with its motion for reconsideration is a discovery document obtained from

defendant NYSE (the "NYSE Document"). NYSE requests that the Court maintain this document under seal. As discussed above, the documents submitted by Standard to support its motion for reconsideration enjoy a limited presumption of access under both the common law and the First Amendment. See supra Part II.B. In its request to maintain the NYSE Document under seal, NYSE made the conclusory assertion that disclosure would harm the then-pending negotiations between NASD and NYSE. (See NYSE's Mot. ¶ 11.) In light of the critical threshold issue decided in Part II.B, and because the NASD-NYSE negotiations have since concluded, the Court requires further briefing as to whether continued protection of the NYSE Document is necessary. In order to justify keeping the document under seal, NYSE must provide information that enables the Court to make "specific, on-the-record findings that sealing is necessary to preserve higher values" and to impose an order that "is narrowly tailored to achieve that aim." Lugosch, 435 F.3d at 124.

**2. Access to "NASD-Only" Documents Used by Standard Against NYSE**

While Standard's motion for reconsideration and NASD's motion for a protective order were both still pending, NYSE asserted in its response to NASD's protective order motion that "if Standard does seek to use [NASD-only d]ocuments against NYSE, NYSE has a right to respond to whatever arguments Standard

might make based on those documents.  To do so, common sense and basic fairness require that NYSE know what the arguments are and on what they are based." (NYSE's Resp. 2.)  NYSE stated that, alternatively, the Court could "preclude Standard from using any [NASD-only d]ocuments against NYSE or reaffirm dismissal of the claims against NYSE that Standard purports to base on such . . . documents." (NYSE's Resp. 3.)

As stated above, the Court formally rejected Standard's request to file the NASD-only documents when it denied Standard's motion for reconsideration. See Standard III, 2007 WL 2049730, at *4 n.2. NYSE has stated that, to the extent that Standard does not seek to use the NASD-only documents against NYSE, "NYSE has no need to see those documents in connection with this litigation." (NYSE Resp. 2.)  Therefore, in light of the Court's rejection of NASD's proposed filing and denial of reconsideration, NYSE's request is moot.  Should this litigation continue[21] and Standard ever renew its request to file NASD-only documents in a proceeding that affects NYSE's legal rights, NYSE may once again submit this argument for the Court's consideration.

**D. Standard's Request for Mandatory Disclosure to the SEC**

Standard asks that the Court, regardless of how it disposes of NASD's protective order motion, order disclosure of the

---

[21] See supra note 2.

documents to the SEC. (See Standard's Surreply 11.) The Court previously addressed this issue when denying Standard's motion for reconsideration, observing that "Standard has already brought the existence of allegedly relevant documents to the SEC's attention, and the SEC has the authority to solicit any material that it considers necessary to its review." Standard III, 2007 WL 2049730, at *3 (citing 15 U.S.C. § 78u). In fact, Standard "acknowledges . . . that it has asked the SEC to review the expedited discovery materials that have been obtained through this litigation," id. at *3, but that the SEC has declined to do so. (See Standard's July 31 Letter 1.) Additionally, as the Court has noted several times, Standard retains the ability to appeal the SEC's approval of the NASD-NYSE Bylaws to the Court of Appeals. See Standard III, 2007 WL 2049730, at *3. This Court will not act as Standard's vehicle for foisting the documents upon the SEC.   Therefore Standard's request for mandatory disclosure is denied.

## III.  CONCLUSION

In light of the importance of the Court's holding on judicial documents and the conclusion of negotiations between NASD and NYSE, the Court requests that the parties make additional submissions regarding whether NASD and NYSE can establish good cause for continued protection of the documents, using the good cause standard elucidated in this Opinion.

Instructions  for  these  submissions  will  be  contained  in  a
separate order accompanying this Opinion.


SO ORDERED.


_____
    SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE


Dated:    New York, New York
          September 26, 2007

Instructions for these submissions will be contained in a separate order accompanying this Opinion.

SO ORDERED.

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         September 26, 2007

40