UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------X
STANDARD INVESTMENT CHARTERED,      x
INC.,                               x        07 Cv. 2014 (SWK)
        Plaintiff                   x
                                    x        **OPINION**
            -against-               x
                                    x
NATIONAL ASSOCIATION OF             x
SECURITIES DEALERS, INC., et al.,   x
                                    x
        Defendants.                 x
-----------------------------------X
```

**SHIRLEY WOHL KRAM, U.S.D.J.**

Defendants National Association of Securities Dealers, Inc. ("NASD")[1] and NYSE Group, Inc. ("NYSE"), on behalf of themselves and several individual defendants, seek a protective order preventing plaintiff Standard Investment Chartered, Inc. ("Standard") from disclosing documents that Standard acquired during expedited discovery. On September 26, 2007, the Court issued an Opinion resolving certain threshold issues and requesting additional briefing from all parties. See generally Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers ("Standard IV"), 07 Cv. 2014 (SWK), 2007 WL 2790387 (S.D.N.Y. Sept. 26, 2007). For the reasons discussed below, the Court

---

[1] While the instant motion was pending, NASD changed its name to the Financial Industry Regulatory Authority, Inc. ("FINRA"). For the sake of convenience, the Court continues to refer to defendants FINRA, Mary L. Schapiro, Richard E. Brueckner, and Barbara Z. Sweeney as the "NASD Defendants," or, for brevity's sake, "NASD."

grants in part and denies in part NASD's motion, and denies NYSE's motion.

## I.    BACKGROUND

Familiarity with the factual and procedural history of this case is presumed. See Standard IV, 2007 WL 2790387; Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers ("Standard III"), 07 Cv. 2014 (SWK), 2007 WL 2049730 (S.D.N.Y. July 13, 2007) (denying plaintiff's motion to reconsider decision dismissing suit); Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers ("Standard II"), 07 Cv. 2014 (SWK), 2007 WL 1296712 (S.D.N.Y. May 2, 2007) (dismissing plaintiff's suit for failure to exhaust administrative remedies); Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers ("Standard I"), 07 Cv. 2014 (SWK), 2007 WL 1121734 (S.D.N.Y. Apr. 11, 2007) (upholding decision of magistrate judge partially granting expedited discovery to plaintiff). This opinion recites the facts only insofar as they are relevant to the instant motion.

On March 8, 2007, Standard, a member of the NASD, filed a class action complaint challenging the then-pending regulatory consolidation of the NASD and the NYSE (the "Consolidation"). Standard alleged that the Consolidation would disenfranchise certain NASD members, and that the defendants failed to comply with Delaware state law while soliciting support for the Consolidation. Against the defendants' wishes, Standard was

2

granted limited expedited discovery in aid of an anticipated motion to preliminarily enjoin the Consolidation. See Standard I, 2007 WL 1121734, at *1. Shortly thereafter, however, the Court dismissed Standard's complaint for failure to exhaust administrative remedies before the Securities and Exchange Commission ("SEC"). See Standard II, 2007 WL 1296712, at *1.

The Court subsequently directed that "[a]ny party seeking continued protection of documents (or any references to the content of such documents) filed, or sought to be filed, as part of this litigation shall move for a protective order . . . ." See 07 Cv. 2014 (SWK), Dkt. No. 83. NASD made a timely motion for such an order. Standard then filed a motion for reconsideration of the Court's opinion dismissing its claims. The Court denied Standard's motion for reconsideration on July 13, 2007. See Standard III, 2007 WL 2049730, at *1.

In its first opinion addressing NASD's protective order motion, the Court decided several preliminary issues. Applying the test enunciated by the Second Circuit in Lugosch v. Pyramid Company of Onondaga, 435 F.3d 110 (2d Cir. 2006), the Court concluded that the documents submitted with Standard's motion for reconsideration carry both a minimal presumption of public access and a qualified presumption of access under the First Amendment, see Standard IV, 2007 WL 2790387, at *8-*11, while the documents submitted in opposition to NASD's motion to

dismiss, and the documents acquired by Standard during discovery but never filed with the Court (the "unfiled documents"), are subject to neither presumption, see id. at *4-*8. Additionally, the Court held that a document obtained from NYSE and submitted with Standard's motion for reconsideration (the "NYSE Document") is subject to both presumptions. See id. at *14. The Court also invited the parties to make further submissions regarding the propriety of the defendants' desired protective order in light of the legal standards enunciated by the Court. See id. at *15.

## II.  DISCUSSION

### A. Legal Standard[2]

Federal Rule of Civil Procedure 26(c) provides that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Protective orders can take a variety of forms in order to fit the circumstances of the case. See, e.g., Blanchard & Co. v. Barrick Gold Corp., 02 Cv. 3721, 2004 WL 737485, at *5-*6 (E.D. La. Apr. 5, 2004) (comparing "narrow" protective order, covering "specific, identified information," with "blanket protective order," which allows protection of entire documents containing sensitive information).

---

[2]  For ease of reference, the Court reiterates the standard governing motions for protective orders. For a more thorough discussion, see Standard IV, 2007 WL 2790387, at *1-*3.

Although the Court has already dismissed Standard's claims, the Court retains jurisdiction to "dispose of material in its files as it thinks appropriate." Gambale v. Deutsche Bank AG, 377 F.3d 133, 139 (2d Cir. 2004); see also id. at 141 ("The court's supervisory power does not disappear because jurisdiction over the relevant controversy has been lost."). Parties must demonstrate good cause to justify the continued sealing of documents even if they were not filed with the court. See, e.g., Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1131 (9th Cir. 2003). Moreover, courts have required a party seeking a protective order to demonstrate good cause for protecting filed documents even if the documents made their way into the court's files through unusual or strategic means. See, e.g., Gelb v. Am. Tel. & Tel. Co., 813 F. Supp. 1022, 1034 (S.D.N.Y. 1993) (holding defendant to good cause standard despite lack of any "evidentiary reason or procedural requirement to account for" plaintiff's submission of documents to court and suspicion that "this tactic may have been an effort to gain publicity somewhat prematurely").

The burden of establishing good cause lies with the party seeking the protective order. 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2035 (2007) ("Wright & Miller"); Gambale, 377 F.3d at 142 (quoting In re "Agent Orange" Prod. Liab. Litig., 821 F.2d 139, 145 (2d Cir. 1987)). Rule

26(c)'s "good cause" analysis is informed by the common law presumption of public access. Cf. United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Amodeo II"). There is a strong presumption of public access to "'judicial documents,' that is, such 'items filed with the court that are relevant to the performance of the judicial function and useful in the judicial process.'" See In re Terrorist Attacks on September 11, 2001, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (quoting SEC v. TheStreet.com, 273 F.3d 222, 231 (2d Cir. 2001)). "Accordingly, a party seeking a protective order sealing trial, other court hearings, or motions and accompanying exhibits filed with the court must satisfy a more demanding standard of good cause." In re Terrorist Attacks, 454 F. Supp. 2d at 222-23.

Nevertheless, the Second Circuit has also noted that "an abundance of statements and documents generated in federal litigation actually have little or no bearing on the exercise of Article III judicial power. . . . Unlimited access to every item turned up in the course of litigation would be unthinkable." Amodeo II, 71 F.3d at 1048. Courts deciding protective order motions must therefore locate documents on "a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Id. at 1049:

> Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason. Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach, and stand on a different footing than a motion filed by a party seeking an action by the court, or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions.

Id. at 1050 (internal quotation marks, citations, and alterations omitted).

Case law construing Rule 26(c) has established several factors informing that Rule's good cause requirement. First, the movant must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause." Wright & Miller § 2035. "'Ordinarily, good cause for a protective order exists when a party shows that disclosure will result in a clearly defined, specific and serious injury.'" Schiller v. City of New York, 04 Cv. 7922 (KMK) (JCF), 04 Cv. 7921 (KMK) (JCF), 2007 WL 136149, at *5 (S.D.N.Y. Jan. 19, 2007) (quoting In re Terrorist Attacks, 454 F. Supp. 2d at 222 (internal quotation marks, citation, and alterations omitted)). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. Moreover, the harm must be significant, not a mere trifle.'" Schiller, 2007 WL

136149, at *5 (quoting <u>Cipollone v. Liggett Group, Inc.</u>, 785 F.2d 1108, 1121 (3d Cir. 1986)); <u>cf.</u> <u>Allen v. City of New York</u>, 420 F. Supp. 2d 295, 302 (S.D.N.Y. 2006) (denying protective order motion based solely on "generalized and unsupported claims of harm that might result from disclosure"); <u>Melohn v. Schraub</u>, 90 Cv. 4456 (SWK) (MHD), 1991 WL 33415, at *1 (S.D.N.Y. Mar. 7, 1991) (same).

In addition to the common law presumption of public access discussed to this point, courts have identified a similar, though more demanding, presumption stemming from the First Amendment. <u>See, e.g.,</u> <u>Lugosch</u>, 435 F.3d at 124; <u>Gambale</u>, 377 F.3d at 140 & n.4. The First Amendment's "qualified right of access to judicial documents" is "a necessary corollary of the capacity to attend the relevant proceedings." <u>Hartford Courant Co. v. Pellegrino</u>, 380 F.3d 83, 93 (2d Cir. 2004). Once a court has determined that "the more stringent First Amendment framework applies, continued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." <u>Lugosch</u>, 435 F.3d at 124.

## B. Preliminary Conclusions

Before assessing the theories that NASD and NYSE have offered in favor of protection, the Court addresses two of

Standard's counterarguments, as they apply to nearly all of the categories of documents discussed below.

## 1. Standard's Delaware Law Argument

In support of its arguments that all of the discovery documents must be disclosed, Standard argues that a protective order "would be contrary to" section 220 of the Delaware Business Corporation Law ("section 220") (see Standard's Surreply 7), which gives Standard "a statutory right to access many of the documents" (Standard's Supp. Opp'n 15). The Court disagrees.

Courts in this district have denied motions for protective orders under circumstances where a statute, narrowly construed, mandates disclosure. See, e.g., Palmiotti v. Metro. Life Ins. Co., 04 Cv. 0718 (LTS) (JCP), 2006 WL 510387 (S.D.N.Y. Mar. 1, 2006) (reversing decision based on magistrate judge's broad reading of statute). Section 220, however, does not mandate broad, immediate disclosure. Instead, the party seeking access to corporate documents must meet several procedural prerequisites, and the court must engage in a fact-specific balancing test, narrower than that which exists under Federal Rule of Civil Procedure 26, to determine if access to the documents is warranted. See Del. Code Ann. tit. 8, § 220 (2007); Disney v. Walt Disney Co., Civ. A. 234-N, 2005 WL 1538336, at *5 (Del. Ch. June 20, 2005). Moreover, the discovery that one can

obtain under the statute is limited. See Amalgamated Bank v. UICI, Civ. A. 884-N, 2005 WL 1377432, at *1 (Del. Ch. June 2, 2005) ("Invocation of the statutory right to inspect corporate books and records . . . does not open the door to wide ranging discovery that would be available in support of litigation.") (internal quotation marks and citation omitted); see also Columbia Aluminum Employee Stock Ownership Plan v. Columbia Aluminum Corp., 933 F. Supp. 999, 1001 (E.D. Wa. 1996) (indicating that shareholder's purpose in requesting records must not be contrary to best interests of corporation) (internal citation omitted). Ultimately, while section 220 creates an important tool for shareholders, it allows only limited access and imposes restrictions where such access could be damaging to the corporation. Therefore, assuming arguendo that section 220 is applicable in the instant case, the imposition of a protective order after a careful balancing of interests violates neither the law's letter nor spirit.[3]

---

[3] Even when a judge of this circuit has suggested that section 220 could defeat an assertion of the attorney-client privilege, see In re Dow Corning Corp., 261 F.3d 280, 287 (2d Cir. 2001) (Parker, J., dissenting), it was within the context of a motion to compel discovery, not a motion to effect the public disclosure of discovery materials. As the Court discusses later in this opinion, see infra Part II.C.3.a, the balance of interests is quite different, and weighs more heavily in favor of disclosure, when a party is seeking documents in order to prove its case in pending litigation.

## 2. Privilege and Waiver

Another primary issue of contention is the extent to which the documents in question are protected by privilege and, if so, whether NASD waived that privilege through any of its activities during the pendency of this litigation. NASD has premised its good cause showing on, <u>inter</u> <u>alia</u>, the need to protect "confidential deliberative processes" and "closely held commercial information." (NASD's Mot. 1.) Standard decried this argument as a faulty attempt to invoke the deliberative process (<u>see</u> Standard's Opp'n 8) and self-evaluation privileges (<u>see</u> Standard's Opp'n 14-15). In response, NASD disclaimed any reliance on the two privileges, asserting that they "control whether a document must be produced <u>in the first instance</u>, not whether a confidentiality order should be entered covering documents that have <u>already</u> been produced subject to interim confidentiality protections." (NASD's Reply 12-13 (emphasis in original).) Instead, NASD urged the Court to consider "the <u>reasons</u> that these privileges exist" when determining whether good cause exists to issue a protective order. (NASD's Reply 13 (emphasis in original).) Nonetheless, both parties draw heavily on case law pertaining to the invocation and waiver of various privileges when advancing their competing arguments regarding the alleged confidential status of the documents. Therefore,

some clarification of the Court's approach to the privilege question is necessary.

Although a valid assertion of privilege constitutes good cause, a court may impose a protective order when no established privilege is applicable. See Kunstler v. City of New York, 04 Cv. 1145 (RWS) (MHD), 2006 WL 2516625, at *8, *11 (S.D.N.Y. Aug. 29, 2006) (collecting cases), aff'd 242 F.R.D. 261 (S.D.N.Y. 2007). Cf. also In re Student Finance Corp., 02 Cv. 11620 (JBR), 2006 WL 3484387, at *11 (E.D. Pa. Nov. 29, 2006) (noting that Rule 26(c) allows courts to "vindicate the purposes of" a privilege even when such privilege is technically inapplicable); Collens v. City of New York, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (implying that privilege and "good cause" are not synonymous).

Consequently, although NASD has not asserted any formal privileges, the Court remains mindful of the basic rationales offered for protecting confidential business information and internal deliberations of corporate boards of directors.[4] Therefore, though NASD's disclosure to Standard is a factor the Court must consider when assessing whether NASD has any continued need for confidentiality, it does not preclude the

---

[4] The Court is also aware, however, that "'generalized reiterations of the policies underlying [a] privilege'" are insufficient to demonstrate good cause. Schiller v. City of New York, 244 F.R.D. 273, 276 (S.D.N.Y. 2007) (quoting Kunstler v. City of New York, 04 Cv. 1145 (RWS) (MHD), 2005 WL 2656117, at *1 (S.D.N.Y. Oct. 18, 2005)).

possibility of a protective order that limits the disclosure and use of the documents to the instant litigation. Similarly, any past disclosures by NASD are relevant to the Court's consideration not because they constitute waivers of privilege but because they may undercut NASD's argument that continuing protection is necessary to prevent injury to the corporation. Cf. Centauri Shipping Ltd. v. W. Bulk Carriers KS, 07 Cv. 4761 (RJS) (HBP), 2007 WL 3378254, at *7 (S.D.N.Y. Nov. 5, 2007); Sherwin-Williams Co. v. Spitzer, 04 Cv. 185 (DNH) (RFT), 2005 WL 2128938, at *14-*15 (N.D.N.Y. Aug. 24, 2005); see also Gambale, 377 F.3d at 144 n.11 (noting futility of issuing protective order for information that has already been publicly disclosed).

### 3. The Inadvertent Disclosure of Standard's Appellate Brief to the SEC

While the instant motion was under review, an in-house attorney at NASD, unaware of the confidential contents of Standard's opening appellate brief, mistakenly sent the brief to the SEC. (See NASD's Letter 1, Jan. 9, 2008.) The SEC has since agreed to "isolate [all copies of the brief] pending further action by the parties and the Court." (NASD's Letter 1, Jan. 9, 2008.)

Standard argues that NASD's disclosure of the brief, which contains or refers to much of the same information that NASD seeks to protect in its current motion, undermines NASD's

argument that a protective order is necessary. (See Standard's Letter 1-2, Jan. 8, 2008.) Because the disclosure to the SEC was unintentional, however, the Court cannot conclude that NASD has deliberately renounced any claim to the confidentiality of the documents. Furthermore, because the SEC has agreed to maintain the confidentiality of the brief pending the resolution of this motion, this is not a situation where the issue of protection is moot because "the genie is out of the bottle." Gambale, 377 F.3d at 144 & n.11 (holding that, once publicized, information cannot be protected, even though publication was in error). The Court therefore concludes that NASD's inadvertent disclosure to the SEC does not defeat its request for a protective order.

The Court now turns to its analysis of particular documents.

## C. NASD's Documents

### 1. Judicial Documents for Which NASD No Longer Seeks Protection

NASD has indicated that it no longer seeks protection of certain documents previously classified by the Court as judicial. (See NASD's Letter 2, Dec. 5, 2007.) These documents are therefore excluded from the accompanying protective order and are immediately disclosable.

### 2. The "Fairness Opinion Documents"

NASD seeks protection of a category of documents "containing, discussing, or reflecting an opinion or analysis

that NASD obtained from an outside firm as to whether the acquisition [of NYSE's regulatory function] was fair to NASD from a financial point of view and documents reflecting the data upon which that opinion was based" (Second Declaration of Todd Diganci ("2d Diganci Decl." ¶ 7) (the "Fairness Opinion Documents"). This category consists of both judicial and non-judicial documents. In light of the different standards of good cause associated with each, the Court discusses the two categories separately.

### a. Non-judicial Documents

Because the non-judicial documents in this category were exchanged in discovery but never filed with the Court, they carry no presumption of public access under either the common law or the First Amendment, see Amodeo II, 71 F.3d at 1050. Thus, although NASD must demonstrate a particularized harm associated with disclosure in order to justify the continued sealing of these documents, see Byrnes v. Empire Blue Cross Blue Shield, 98 Cv. 8520 (BSJ) (MHD), 2000 WL 60221, at *3, there is no presumption in favor of disclosure. See Amodeo II, 71 F.3d at 1050; Byrnes, 2000 WL 60221, at *6.

NASD has shown good cause for the imposition of a blanket protective order covering the non-judicial Fairness Opinion Documents that, if disclosed, would reveal NASD's valuation of the Consolidation or its negotiating strategies. NASD has

demonstrated that it keeps such information strictly
confidential, even within the organization itself. (See 2d
Diganci Decl. ¶ 22-23.) Additionally, it has clearly defined the
injury it stands to suffer by identifying particular future
transactions with respect to which broad disclosure would cause
it to suffer a competitive disadvantage.[5] (See 2d Diganci Decl. ¶
14-18.) Although the documents in this category do not directly
enumerate NASD's strategies, an outsider with knowledge of the
final terms of the Consolidation could, upon viewing the facts

---

[5] Standard objects that NASD's argument is invalid because it
"does not identify any business opportunity that NASD is
actively pursuing or currently negotiating that might by
impacted by disclosure." (Standard's Supp. Opp'n 9 (emphasis
added).) Standard further argues that NASD has no further
"insider knowledge" that it must protect from NYSE because the
two have now merged into a single entity. (See Standard's Supp.
Opp'n 9-10.) Neither argument is persuasive under the
circumstances of this case. It is sufficient that NASD has
identified particular transactions that it is likely to pursue
in the future; it does not have to prove that such transactions
are guaranteed to occur. See, e.g., Anderson v. Cryovac, Inc.,
805 F.2d 1, 7 (1st Cir. 1986) ("A finding of good cause must be
based on a particular factual demonstration of potential harm .
. . .") (emphasis added); see also Green Mt. Chrysler Plymouth
Dodge Jeep v. Crombie, 05 Cv. 302, 05 Cv. 304, 2007 WL 922255,
at *7 (D. Vt. Mar. 23, 2007). Additionally, Standard's assertion
that the Consolidation resulted in complete transparency between
NASD and NYSE appears to be incorrect. (See 2d Diganci Decl. ¶
18 ("[The Consolidation] consisted of the acquisition by NASD of
only the member regulatory function of NYSE. Other NYSE
functions are continuing to operate under the ownership of NYSE
and its affiliates.").) Even assuming arguendo that the
Consolidation and creation of FINRA resulted in across-the-board
information sharing between NASD and NYSE, public disclosure
could still harm FINRA's ability to renegotiate contracts with
the stock exchanges it currently services or to pursue contracts
with potential future clients.

and figures in NASD's records, use that information to deduce NASD's negotiation tactics. By demonstrating that public disclosure could alter NASD's (or FINRA's) position in the securities market, NASD has established good cause for the continued protection of the non-judicial Fairness Opinion documents. Cf. Gelb, 813 F. Supp. at 1035 (holding that "defendants' assertion that its [sic] competitors who do not now have [information on marketing tactics] could use it to do competitive injury to the defendants is . . . a sufficient basis to grant defendants' motion to seal . . . .").

Standard has not identified an interest that outweighs this particular showing of good cause. Standard's constant refrain has been an invocation of the purported public interest in disclosure (see, e.g., Standard's Surreply 9-10) and the reminder that, once documents are disclosed, "Plaintiff may disseminate materials obtained during discovery as they [sic] see fit" (Standard's Supp. Opp'n 15 (internal quotation marks and citation omitted)). But "litigants do not have an automatic right to provide the public with information produced during discovery," and thus "[a] generalized assertion that the public should know" about discovery documents does not defeat a showing of good cause. New Castle County v. Hartford Accident & Indem. Co., M8-85 (MEL), 1987 WL 10736, at *2 (S.D.N.Y. May 1, 1987).

Additionally, none of NASD's public statements or third-party disclosures defeats its claim to the need for confidentiality of this business information. Its disclosure of one document to the Internal Revenue Service (IRS) for purposes of obtaining a private-letter ruling does not undermine its claim to confidentiality because (a) the IRS is not, and cannot be, one of NASD's business competitors, and (b) as the Court will discuss further in Part II.C.3, the information NASD seeks to protect is of the kind that would be redacted before IRS documents were released for public inspection. Nor do NASD's discussions of the <u>terms</u> of the Consolidation with its member firms make protection of the organization's valuations and negotiation strategies unnecessary. Standard seizes upon the use of the term "balance sheet" in notes taken at one meeting with member firms as evidence that NASD disclosed its entire analysis of the transaction with its members. (<u>See</u> Standard's Supp. Opp'n 12.) The Court's review of the filed discovery materials strongly suggests, however, that the "balance sheet" refers only to the description of the Consolidation's basic terms.

Because the information pertaining to NASD's valuation of the Consolidation has been kept on a strictly need-to-know basis, a protective order safeguarding documents that contain such information would not be futile. The Court therefore grants NASD's motion for a protective order to include the non-judicial

documents containing confidential business information and negotiation strategies.[6]

### b. Judicial Documents

The judicial Fairness Opinion Documents are subject to a presumption of access under the common law, see Amodeo II, 71 F.3d at 1050, and under the First Amendment, Lugosch, 435 F.3d at 124. With respect to the common law, the judicial Fairness Opinion Documents enjoy "little more than a prediction of public access absent a countervailing reason," because they played a negligible role in the resolution of Standard's motion for reconsideration. Amodeo II, 71 F.3d at 1050. The Court therefore concludes that, for the reasons enumerated in Part II.C.2.a, NASD has made a good cause showing sufficient to overcome that presumption. The First Amendment presumption of access, however, requires a closer analysis.[7]

---

[6] There is some dispute amongst the parties as to whether the Fairness Opinion Documents are proprietary and were used in NASD's communications with the IRS. (See Standard's Supp. Opp'n 10 n.11.) These considerations are irrelevant to the Court's determination that the documents contain confidential business information, and thus the Court declines at this time to resolve the issue.

[7] The Court notes the seeming incongruity of its conclusion that the judicial Fairness Opinion Documents, in light of the negligible role they played in the resolution of Standard's motion for reconsideration, carry only a nominal presumption of access under the common law, yet simultaneously trigger the more demanding standard created by the First Amendment. Yet existing Second Circuit case law appears to permit no other result.

The United States Supreme Court and the Second Circuit have announced neither an exhaustive list of considerations that qualify as "higher values" that defeat the First Amendment presumption of access, nor a methodology by which lower courts can identify such values for themselves. See Green Mt. Chrysler Plymouth Dodge Jeep v. Crombie, 05 Cv. 302, 05 Cv. 304, 2007 WL 922255, at *5 (D. Vt. Mar. 23, 2007). The interest in protecting "business information that might harm a litigant's competitive standing" has, at a minimum, been recognized by the Supreme Court as potentially sufficient to defeat the common law presumption. Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978) (citations omitted).

The Court has considered many factors, including "the extent of the closure or sealing sought; the potential damage to [NASD] from disclosure; the significance of the public interest at stake; the extent to which [NASD] intend[s] to prove [its] case by relying on documents [it] seek[s] to withhold from public scrutiny; [and] whether the particular matter is integral or tangential to the adjudication." Crombie, 2007 WL 922255, at *7. In this instance, NASD requests the sealing of only a relatively short list of facts and figures, in a case in which thousands of pages of documents were exchanged in discovery. It has explained the extent to which the company has kept the information confidential and the value of the information to

20

NASD and its potential competitors. Cf. id. (noting that plaintiff "automobile manufacturers ha[d] expended considerable effort to maintain the secrecy of [relevant] information from their competitors"). Disclosure could cause NASD significant competitive disadvantage.

Although a company's interest in avoiding this type of economic injury may not be as weighty as, for instance, a criminal defendant's procedural rights, see In re Herald Co., 734 F.2d 93, 100 (2d Cir. 1984) (holding that district court could restrict access to suppression hearing upon finding that closure is necessary to safeguard defendant's rights or integrity of pending investigations), or the need to protect an underage victim of a sex offense, see Globe Newspaper Co. v. Super. Ct. for Norfolk County, 457 U.S. 596, 607-08 (1982), it is nonetheless comparable to other harms that courts have recognized as potentially sufficient to defeat the presumption in favor of disclosure. See, e.g., Nixon, 435 U.S. at 598 (recognizing courts' protection of damaging information revealed during divorce proceedings, and courts' "refus[al] to permit their files to serve as reservoirs of libelous statements for press consumption") (internal citations omitted); Crombie, 2007 WL 922255, at *5 (noting that interest in protecting a trade secret might sometimes be "higher value" that defeats First Amendment presumption of access). NASD has not tried to use the

information at issue in order to prove its case, nor can it at this point, as the Court has dismissed the case. Furthermore, although the public has an interest in access to Standard's submissions in connection with a Court decision based solely on the motion papers, see Lugosch, 435 F.3d at 124 (citation omitted), this particular information sheds almost no light on either the substance of the underlying proceeding or the basis for the Court's decision. See Hartford Courant Co., 380 F.3d at 93 (referring to importance of public's "ability to ascertain the substance of particular proceedings"). After a careful balancing of the above factors, the Court concludes that NASD's interest in protecting confidential business information outweighs the qualified First Amendment presumption of public access to the judicial Fairness Opinion documents.

The First Amendment also requires a sealing order to be "narrowly tailored" to "preserve higher values." Lugosch, 435 F.3d at 124. One way to achieve narrow tailoring is to order redaction instead of wholesale sealing of documents. Cf. Crombie, 2007 WL 922255, at *7. The first judicial Fairness Opinion Document spans two pages.[8] Redaction of this document would leave nothing of substance and is therefore not possible. The second document, however, consists of several paragraphs of

---

[8] These pages bear the Bates numbers NASD_DEFS 0015944-5945.

meeting notes.[9] Although much of the text must be redacted in order to protect the information at issue, not every paragraph reveals business information. The Court therefore approves a narrow protective order with respect to these documents, and NASD is ordered to submit an appropriately redacted version of the second document for public filing with the motion papers.

### 3. The "IRS Documents"

Next, NASD seeks protection of various documents associated with a revenue ruling that NASD obtained from the IRS (the "IRS Documents"). NASD asserts that disclosure of the documents would cause harm because (a) the documents could reveal the same confidential business information contained in the Fairness Opinion Documents; (b) some documents "contain highly confidential analyses of NASD's potential liability related to the [Consolidation];" (c) widespread disclosure could undermine NASD's relationship with the IRS; (d) disclosure would run contrary to laws preserving the confidentiality of tax return information; (e) revealing preliminary statements made by the IRS would "put NASD in a position of speaking for the IRS;" and (f) the documents contain NASD's internal analyses of the IRS's response. (See 2d Diganci Decl. ¶ 28-35.)

---

[9] This document bears the Bates number NASD_DEFS 0015878.

### a. The Non-Judicial Documents

The non-judicial IRS Documents that NASD seeks to protect were exchanged during discovery but were not filed with the Court. (2d Diganci Decl. ¶ 26.) As such, there is no presumption of access to these documents, and a specific showing of harm from disclosure will justify issuance of a protective order. Amodeo II, 71 F.3d at 1050.

Not all of NASD's arguments for protecting the IRS Documents pass muster in this case. For example, NASD has not sufficiently demonstrated that disclosure of the documents at issue would cause irreparable damage to NASD's relationship with the IRS, or would result in NASD "speaking for" the IRS. As NASD itself recognizes, federal law "provides for public inspection of any written determination and any background file document relating to the written determination." (Declaration of Mario J. Verdolini, Jr. ("Verdolini Decl.") ¶ 7.) The law thus explicitly contemplates disclosure of materials of the kind found in the IRS Documents, and NASD cannot reasonably argue that its interactions with the IRS were somehow predicated on an assumption that all information would always be kept confidential. Moreover, the redactions required by law, see 26 U.S.C. § 6110(c), are mainly designed to protect the taxpayer's privacy, not that of the IRS, see, e.g., S. Rep. No. 94-938, at 309 (1976) (noting concern that, "if a taxpayer's confidential

information necessary for an IRS determination is open to public inspection, the taxpayer may be injured financially or by loss of his personal privacy," and might thus "become reluctant to request an IRS determination"). Finally, evidence of the existence, and even the substance, of NASD's communications with the IRS is already in the public domain. See, e.g., Self Regulatory Organizations, Exchange Act Release No. 34-56145, 2007 SEC LEXIS 1640, at *76-*79 (July 26, 2007), also available at http://www.sec.gov/rules/sro/nasd/2007/34-56145.pdf. It is no secret that NASD and the IRS engaged in a back-and-forth exchange regarding the propriety of NASD's one-time payment of $35,000 to its members. Therefore NASD cannot plausibly argue that disclosure would destroy any IRS reliance on confidentiality. Nor has it, on the record before the Court, convincingly demonstrated any likelihood of public misperception that NASD is "speaking for" the IRS. Cf. Schiller, 2007 WL 136149, at *6 (denying request for protective order on grounds that city had not "demonstrated that any confusion that results [from the release of information in question] will be so serious and damaging to the defendants as to justify a protective order"). The Court therefore will not issue a protective order on these grounds.

Similarly, NASD's justification for protecting its "internal analysis of and reactions to communications with the

IRS," (2d Diganci Decl. ¶ 35), is too cursory, even under the more lenient standard for protecting unfiled documents. The conclusory assertion that NASD "would be harmed" by disclosure of such information, without any description or analysis of how such harm would occur, does not constitute good cause.

Nonetheless, NASD has provided adequate justification for the protection of some of the information in the non-judicial IRS Documents. Federal law provides for protection of taxpayer "return information." See 26 U.S.C. § 6103. Additionally, when the IRS releases written determinations and relevant background files for public inspection, it must redact certain identifying information in order to protect taxpayer privacy, see 26 U.S.C. § 6110(c)(5), and prevent financial injury, see S. Rep. No. 94-938, at 309 (1976), or competitive disadvantage, see H.R. Rep. No. 94-658, at 317 (1975). Although these provisions contain no mandate requiring federal judges to protect this information, the rationale underlying the IRS's obligation is equally applicable in the instant case. Especially given the fact that there is no presumption of public access attaching to any of the non-judicial documents, NASD's interest in preventing the release of information that will subject it to financial harm constitutes good cause.

Moreover, the Court rejects Standard's argument that NASD's SEC filings, Proxy Statement, and statements on its website have

waived any claim of confidentiality to the type of information covered by the IRS statutes. Standard argues that "NASD cannot now claim the shield of confidentiality after repeatedly having used the documents as its beneficial sword." (Standard's Supp. Opp'n 11.) This argument fails for two reasons. First, most of the cases that Standard relies upon (see Standard's Supp. Opp'n 11) deal with motions to compel discovery, a context that involves a much different balancing of interests. Here, the imposition of a protective order will not impede Standard's ability to prove its case in litigation, as the Court has already dismissed Standard's claims.

Second, a protective order covering the statutorily specified information does not raise fairness concerns. Courts in this circuit have held that a party broadly waives claims of confidentiality when it "makes factual assertions, the truthfulness of which may be assessed only by an examination of the privileged communications or documents." Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Alcoa S.S. Co., 232 F.R.D. 191, 199 (S.D.N.Y. 2005) (internal quotation marks and citation omitted). This principle, however, applies primarily to assertions made in the context of litigation. See In re Metlife Demutualization Litig., 00 Cv. 2258 (TCP) (AKT), 2007 WL 1017603, at *7-*8 (E.D.N.Y. Mar. 30, 2007) (collecting cases), rev'd in part on other grounds by 495 F. Supp. 2d 310 (E.D.N.Y. 2007). When

disclosures are extrajudicial in nature, loss of confidentiality is customarily limited to the information actually disclosed, because such disclosures, even if they are "'one-sided' or misleading'"—–"create no risk of <u>legal</u> prejudice until put at issue in the litigation by the privilege-holder." <u>In re von Bulow</u>, 828 F.2d 94, 103 (2d Cir. 1987) (emphasis in original).[10] Although some courts have held that even an extrajudicial disclosure waives confidentiality with respect to the entire subject matter of the disclosure, <u>see, e.g.</u>, <u>Bank of Am., N.A. v. Terra Nova Ins. Co.</u>, 212 F.R.D. 166, 174 (S.D.N.Y. 2002) (collecting cases), the Court finds no justification for holding that there is such a broad waiver in this case. Although NASD has publicly disclosed the contours of its discussions with the IRS, it has not revealed the type of information protected by federal statute. It thus continues to have a viable interest in the protection of information, the disclosure of which would subject it to financial harm or competitive disadvantage, and Standard has not presented any countervailing reason sufficiently weighty to overcome that interest. It is therefore

---

[10] Moreover, even if NASD were trying to give the SEC a one-sided explanation of the tax consequences of the Consolidation (<u>see</u> Standard's Supp. Opp'n 11), this is not a situation of profound unfairness, as Standard has brought the additional information to the SEC's attention, and the SEC has authority to request from NASD documents necessary for its review, <u>see</u> <u>Standard IV</u>, 2007 WL 2790387, at *15.

appropriate to issue a protective order that covers this information.

The only remaining issue is the scope of the protective order covering the non-judicial IRS Documents. NASD's outside tax counsel avers that the IRS frequently allows "the redaction of the entirety of such documents as annual reports, valuations, expert opinions and correspondence addressing specific factual issues." (Verdolini Decl. ¶ 11.) In this situation, however, Rule 26(c) requires a specific demonstration of good cause for the protection of information. Therefore, in light of the Court's rejection of several of NASD's bases for good cause, the Court declines to issue a blanket protective order covering the entirety of the non-judicial IRS Documents and instead issues a narrow protective order covering only that information typically protected by 26 U.S.C. §§ 6103 and 6110(c)--except for NASD's "identity" or "identifying details"[11]--and any information of the type meriting protection in the Fairness Opinion Documents.

### b. The Judicial Documents

The Court has reviewed the judicial IRS Documents <u>in camera</u> and concludes that a narrow protective order of the kind

---

[11] As NASD has repeatedly disclosed that it sought and received a private letter ruling from the IRS, it will not be harmed if identifying information, such as the company's name, in the documents is disclosed, as long as the other information covered by the statutes is redacted.

applicable to the non-judicial IRS Documents strikes an adequate balance between the interests of NASD, Standard, and the public. First, NASD has asserted, and the Court's inspection has revealed, that certain statements in the judicial IRS Documents contain the same confidential business information that NASD sought to protect in the Fairness Opinion Documents. For the same reasons discussed in Part II.C.2.b, redacting the IRS Documents for public filing will adequately protect NASD's interests in this material.

Additionally, under the circumstances of this case, redaction of the category of information protected by the federal tax laws is also appropriate. This information constitutes only a fraction of the judicial IRS Documents, and NASD has not relied on the material to prove its case. Cf. Crombie, 2007 WL 922255, at *7 (emphasizing importance of these factors). Although NASD's statements about the tax consequences of the one-time $35,000 member payment are germane to Standard's original allegations, the minutiae of NASD's "return information" are not critical to the public's understanding or discussion of the trajectory of the case. Therefore, the potential harm to NASD from the disclosure of its "return information," as recognized in 26 U.S.C. §§ 6103 and 6110, outweighs the public interest in disclosure in this case.

In order to craft a remedy that is narrowly tailored to the instant situation, the Court denies NASD's request for wholesale sealing of the judicial IRS Documents and instead orders the redaction of the type of "return information" specified above. Cf. Crombie, 2007 WL 922255, at *7 (highlighting redaction as potentially effective mechanism to balance competing interests where protective order is sought). Indeed, large portions of the judicial IRS Documents contain purely factual information that does not merit continued protection. NASD is therefore ordered to submit appropriately redacted versions of the judicial IRS Documents for public filing.

### 4. The "Board Documents"

The final specific category of documents for which NASD seeks protection consists of "Board Minutes," which record the substance of several of NASD's 2006 Board meetings, and "Board Kits," which the company created and sent to Board members in anticipation of the meetings (collectively, the "Board Documents"). (See Declaration of Barbara Z. Sweeney ("Sweeney Decl.") ¶ 5.) Notwithstanding the disclosures made to Standard during discovery, NASD keeps these materials strictly confidential in order to encourage "open and candid communications" among Board members. (Sweeney Decl. ¶ 6-7.)

### a. The Non-Judicial Documents

Most of the Board Documents produced in discovery are not judicial, and many are unfiled, and thus subject to no presumption of public access. NASD argues in favor of their continued protection on the grounds that disclosure would (1) impede communication among Board members; (2) deter rigorous discussion and investigation of important issues; and (3) make Board members unwilling to serve. (See Sweeney Decl. ¶ 8-10.)

The vague and conclusory assertions of harm offered by NASD are insufficient to justify the continued protection of the Board Documents. The Court views NASD's generalized arguments about a chilling effect on the Board "with some skepticism," as "the exigencies of managing a major corporate business and the consequent need for candid assessment by the decision-makers of key issues are not at all likely to be trumped by the fear that on rare occasions" documents such as these could be disclosed. Byrnes, 2000 WL 60221, at *5; see also MacNamara v. City of New York, 04 Cv. 9216 (KMK) (JCF), 2007 U.S. Dist. LEXIS 17478, at *9, *12 (S.D.N.Y. Mar. 14, 2007) (noting uncertain status of self-critical analysis privilege in Second Circuit and finding no such privilege exists when party seeking protection has strong incentive to critique itself notwithstanding risk of disclosure); Boyd v. City of New York, 86 Cv. 4501 (CSH), 1987 WL 6915, at *2 (S.D.N.Y. Feb. 11, 1987) ("Frank and self-

critical investigation is, in my view, more likely required by the pressure of public scrutiny than discouraged by it."). Additionally, NASD's assertion that disclosure of the Board Documents will "impede NASD's ability to communicate freely with the SEC" (Sweeney Decl. ¶ 12; 2d Diganci Decl. ¶ 40), without a more concrete explanation, does not constitute a showing of good cause. Accordingly, any non-judicial Board Document that does not also qualify for protection as a confidential business information document or a tax document, as described in Parts II.C.2-3, is not subject to the protective order and is disclosable.

### b. The Judicial Documents

NASD seeks to protect the judicial Board Documents for the same reasons that it offered for the non-judicial documents in this category. The Court has reviewed the judicial Board Documents (portions of which have already been redacted) <u>in camera</u> and concludes that, for the same reasons discussed in Part II.C.4.a, NASD has not demonstrated good cause for the continued sealing of these papers. Therefore the judicial Board Documents must be disclosed.

### 5. "Other Unfiled Documents"

NASD also identifies a plethora of other unfiled documents apart from those discussed above. (<u>See</u> 1st Diganci Decl. ¶ 11-16; 2d Diganci Decl. ¶ 45-47.) Although these documents carry no

presumption of public access, see Amodeo II, 71 F.3d at 1050, NASD must still demonstrate good cause for their continued protection. See Foltz, 331 F.3d at 1131. After reviewing NASD's submissions, the Court concludes that it has established good cause for the protection of certain documents that could reveal confidential business information. With respect to the other categories of unfiled documents, however, NASD has failed to justify their continued protection.

### a. Documents Containing Confidential Business Information

NASD has identified a subset of documents that it seeks to protect because those documents contain information that, if disclosed, would reveal the organization's business and negotiation strategies. (See 1st Diganci Decl. ¶ 13-14.) For the reasons set forth supra, in Part II.C.2, the Court concludes that good cause exists to protect these documents.

### b. Remaining Unfiled Documents

On the other hand, NASD has failed to demonstrate good cause for the protection of certain other unfiled documents. Although it has sorted the documents into categories and identified the content of some particular documents, its assertion of the harms that would result from disclosure of some documents is too conclusory to justify the imposition of a protective order. For instance, NASD originally argued for the

protection of one group of documents on the ground that disclosure would hinder its then-pending negotiations with NYSE. (See 1st Diganci Decl. ¶ 11-12.) The Court has since declared this argument moot. See Standard IV, 2007 WL 2790387, at *13. As the Court has held supra, NASD has provided alternative justifications for the protection or redaction of many of these other "unfiled documents" by demonstrating that they contain confidential business or tax return information. (See generally 2d Diganci Decl.) NASD has not provided viable alternative justifications for all of these documents, however. In particular, the documents that NASD recategorized as "Board Documents" cannot be protected for the reasons discussed in Part II.C.4. Additionally, NASD has failed to explain exactly how disclosure of other documents will cause "extreme annoyance, embarrassment, and harm" (see 2d Diganci Decl. ¶ 46-47), and has therefore failed to identify a "clearly defined, specific, and serious injury" with respect to those documents. Schiller, 2007 WL 136149, at *5 (citation omitted); Wright & Miller § 2035. Therefore, any documents that do not qualify for protection under the "confidential business information" designation or redaction under the "tax return information" designation, as these designations are described in the accompanying order, must be disclosed.

## 6. NASD's Request for Return of Protected Documents

NASD seeks a protective order that "would either compel Plaintiff to return all documents produced in [this] matter or, in the alternative, preserve the confidentiality of such documents." (NASD's Letter 1, Dec. 5, 2007.) Courts that have issued protective orders requiring the return of documents have customarily ordered such return at the conclusion of the case, including all appeals. See, e.g., United States v. Basciano, 03 Cr. 929 (NGG), 2006 WL 2270432, at *3 (E.D.N.Y. June 30, 2006) ("The common practice . . . appears to be for protective orders to require the . . . return [of] sensitive material after the completion of all appeals in the case.") (collecting cases); H.L. Hayden Co. v. Siemens Med. Sys., Inc., 130 F.R.D. 281, 282 (S.D.N.Y. 1989). Standard's appeal of the Court's denial of its motion for reconsideration is still pending. Therefore, Standard may retain all documents subject to the accompanying protective order until its current, and any other, appeals in this case have concluded. The documents shall retain their current designations.[12] Standard may only use the documents for the purposes of the instant litigation. Cf. Williams v. Art Inst., 06 Cv. 285-CC/AJB, 2006 WL 3694649, at *16-*17 (N.D. Ga. Sept. 1, 2006); Williams v. Taser Int'l, Inc., 06 Cv. 51 (RWS), 2006

---

[12] For example, any documents qualifying for protection that were originally designated "attorneys' eyes only" shall remain as such.

WL 1835437, at \*2-\*3 (N.D. Ga. June 30, 2006); <u>Rushing v. Time Warner, Inc.</u>, 05 Cv. 474-H, 2006 U.S. Dist. LEXIS 31249, at \*15 (W.D.N.C. May 12, 2006); <u>Aventis Pharma Deutschland Gmbh v. Cobalt Pharms.</u>, 03 Cv. 10492, 2003 U.S. Dist. LEXIS 27236, at \*2, \*18 (D. Mass. Dec. 2, 2003). After the conclusion of the litigation, Standard shall return all documents qualifying for full protection, as well as the unredacted version of documents that will be filed or otherwise disclosed in redacted form. This requirement, of course, does not apply to the documents not covered by the accompanying protective order. <u>See</u> <u>infra</u> Part II.E.

## D. NYSE's Documents

During its period of limited expedited discovery Standard obtained documents from both NASD and NYSE. Standard now seeks the disclosure of an NYSE document filed with the Court, as well as all documents produced by NYSE in discovery. The Court addresses each category of documents in turn.

### 1. Judicial Document

In its last opinion, the Court concluded that the one NYSE document filed by Standard in support of its motion for reconsideration qualifies as a judicial document with a minimal presumption of access under both the common law and the First Amendment. <u>See</u> <u>Standard IV</u>, 2007 WL 2790387, at \*14. NYSE has subsequently withdrawn its request to maintain the document

under seal. (See NYSE's Further Submission Concerning Documents Filed With The Court Under Seal 2, 07 Cv. 2014 (SWK), Dkt. No. 124.) The Court therefore orders the filing of the document bearing the Bates number NYSE 001311-1312.

### 2. Unfiled Documents

NYSE apparently interpreted the Court's May 16 Order as inapplicable to documents that were produced in discovery but never filed with the Court. Consequently, it did not address these documents in its initial request to maintain documents under seal. Nor did Standard, in its initial opposition, indicate any interest in public disclosure of the unfiled NYSE documents. In its supplemental opposition, however, Standard argued that it was entitled to publicly disseminate all documents obtained in discovery but not filed with the Court. NYSE immediately sought clarification of Standard's position. (See NYSE's Supp. Mot. 5.) Standard responded by amending its supplemental opposition to include a request for permission to release all of the unfiled NYSE documents. (See Standard's Nov. 8 Letter.)

NYSE's interpretation of the May 16 Order and the September 26 Opinion as inapplicable to its unfiled documents is curious, as the party seeking protection of documents bears the onus of demonstrating good cause. Gambale, 377 F.3d at 142 (quoting In re "Agent Orange", 821 F.2d at 145); Wright & Miller § 2035. In

other words, the burden is, and always has been, on NYSE to seek protection, and not on Standard to demand disclosure. The Court must therefore determine whether adequate justification exists for continued protection of these documents.

As an initial matter, the Court rejects NYSE's argument that it need not show good cause because it reasonably relied on the expectation that a protective order would be entered in the case. (See NYSE's Supp. Memorandum 2.)[13] NYSE argues that "decisions holding that parties cannot rely on the hope that a protective order might be entered are inapposite" because Standard "unambiguously agreed that an order protecting confidential documents from disclosure to non-parties would be entered." (NYSE's Supp. Memorandum 8 n.25 (emphasis in original).) The question, however, is not whether NYSE could have reasonably relied on the expectation that any protective order would be entered. The proposed protective order upon which NYSE purportedly relied expressly permitted challenges to the parties' confidentiality designations. (See NYSE's Supp. Memorandum, Ex. C ¶¶ 5, 8.) The Second Circuit has already held that reliance upon such a protective order is unreasonable. See Lugosch, 435 F.3d at 126; see also Schiller, 2007 WL 136149, at *5. Therefore, even if NYSE could demonstrate with absolute

---

[13] The Court has already addressed NASD's version of this argument. See Standard IV, 2007 WL 2790387, at *13.

certainty that the parties agreed to enter into the protective order they had contemplated, it still could not reasonably expect that all of the information that it designated as confidential would remain under seal.

The question then becomes whether NYSE has shown good cause for the protection of the documents exchanged in discovery. Cf. Foltz, 331 F.3d at 1131; Schiller, 2007 WL 136149, at *5. Because they are unfiled, these documents are not subject to any presumption of public access. See Amodeo II, 71 F.3d at 1050. Nonetheless, NYSE's purported justifications for a protective order are entirely conclusory and fall short of the demonstration required for a finding of good cause.

NYSE asserts that disclosure of the documents that it has designated "confidential" or "highly confidential" (Supp. Axelrod Decl. ¶ 4) would cause harm because these documents contain highly confidential business information, as well as other sensitive information concerning the Consolidation and NYSE's internal operations. (See Supp. Axelrod Decl. ¶ 5.) These statements, however, fail to explain with sufficient particularity how the release of the specific information contained in the documents will cause these harms.

To date, Standard has asserted no reason for disclosure other than NYSE's alleged failure to demonstrate good cause. (See, e.g., Standard's Nov. 8 Letter.) The lack of a

demonstrated need for the documents, however, is irrelevant, for the burden of establishing good cause rests with NYSE. <u>See Schiller</u>, 2007 WL 136149, at *5. Because NYSE's conclusory arguments cannot sustain a finding of good cause, a protective order is unjustified, and the unfiled NYSE documents are subject to disclosure.

**E. The Motion Papers**

In addition to the discovery documents discussed above, portions of the amended complaint and various motion papers in the instant case remain under seal. Standard seeks to unseal completely the pleadings and motion papers. Motion papers are judicial documents and are thus subject to a strong presumption of access under the First Amendment. <u>See, e.g.</u>, <u>Wellnx Life Scis., Inc. v. Iovate Health Scis. Research, Inc.</u>, 06 Cv. 7785 (PKC), 2007 WL 1573913, at *5 (S.D.N.Y. May 24, 2007); <u>In re Omnicrom Grp., Inc. Sec. Litig.</u>, 02 Cv. 4483 (RCC) (MHD), 2006 U.S. Dist. LEXIS 76782, at *5 (S.D.N.Y. Oct. 23, 2006). Contrary to Standard's implication, however (<u>see</u> Standard's Supp. Opp'n 7 n.8), wholesale publication of motion papers is not required if the papers quote from or contain references to confidential information. Rather, as is the case with individual documents, redaction is often a practical, narrowly tailored strategy for balancing the interest in public access and the interest of one or both parties in the confidentiality of sensitive information.

See, e.g., <u>Thumim v. Bumble Bee Seafoods, Inc.</u>, 00 Cv. 1949 (LMM) (DFE), 00 Cv. 5630 (LMM) (DFE), 2001 WL 883004, at *1 (S.D.N.Y. Aug. 3, 2001); <u>EarthWeb, Inc. v. Schlack</u>, 71 F. Supp. 2d 299, 317 (S.D.N.Y. 1999).

In Parts II.C.2 and II.C.3 of this opinion, the Court concluded that NASD has made a sufficient showing to justify protection of confidential business information and tax return information for both non-judicial and judicial documents. Those findings apply equally to the motion papers. Therefore, in order to maintain the confidentiality of this information, the parties shall submit new versions of the pleadings, motion papers, and their corresponding exhibits, for public filing.[14] The parties are warned that redactions must be as narrow as possible: Only passages that specifically refer to the protected information may be redacted.

## III. CONCLUSION

NASD's motion for a protective order is granted in part and denied in part. NYSE's motion for a similar order is denied in full. An order implementing the foregoing conclusions accompanies this opinion. Execution of this order shall be

---

[14] Exhibits subject to full sealing under the protective order shall not be submitted for public filing. Exhibits subject to redaction shall be filed in their redacted form. This includes the Expert Report of Albert Rossi, CPA, included in Exhibit H to Standard's motion for reconsideration.

stayed for 30 days so that either or both parties may seek appellate review of the Court's decision.

SO ORDERED.

_____
SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE


Dated:     New York, New York
           January 23, 2008

stayed for 30 days so that either or both parties may seek appellate review of the Court's decision.

SO ORDERED.

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          January 23, 2008

