```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- x
STANDARD INVESTMENT CHARTERED, INC.,   :
                                       :
              Plaintiff,               :
                                       :
              -v-                      :
                                       :
NATIONAL ASSOCIATION OF SECURITIES     :
DEALERS, INC. et al.,                  :
                                       :
              Defendant.               x
--------------------------------------
```

07 Civ. 2014 (JSR)

ORDER

JED S. RAKOFF, U.S.D.J.

The Court is in receipt of the attached request from The New York Times to unseal correspondence in the above-captioned case. The Court previously entered an Order, dated October 19, 2009, in response to a similar request from Barron's. In order to keep the two requests on the same track, the Court hereby orders that if any party opposes this request, such party must submit opposition papers by no later than October 30, 2009. If The New York Times wishes to respond to any opposition, it may do so, but only through having counsel appear on its behalf and file responding papers by November 6, 2009. The Court will then consider these submissions and decide what further action is warranted.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       October 22, 2009

# The New York Times

WASHINGTON BUREAU
1627 I Street NW
WASHINGTON, D.C. 20006

October 21, 2009

Hon Jed S. Rakoff
United States District Court
United States Courthouse
500 Pearl Street
New York, NY 1007

Re: Standard Investment Chartered Inc. v. NASD et al, 07 Civ 2014

By FAX: 212-805-7935

Dear Judge Rakoff,

I am a senior writer at The New York Times in Washington. I cover regulatory issues,
including the Securities and Exchange Commission. Last January I wrote an article about
the Standard Investment Chartered lawsuit filed against Mary Schapiro, who had been
nominated to head the Securities and Exchange Commission. (See Attached).
I understand that you are now considering a request to unseal some of the material under
seal in the proceeding.
On behalf of The Times, I request that you unseal the material and that we have access to
it. I am particularly interested in any material produced as part of discovery in the
proceeding that sheds light on the repeated assertions by Ms. Schapiro and other FINRA
executives about the tax implications of the proposed merger. I am also interested in any
material that sheds further light on the discussions between the IRS and exchanges that
occurred in the months leading up to the merger.
Ms Schapiro is now the chairman of an agency that performs a core mission of shedding
greater transparency on the marketplace. Her role in the merger of regulatory units of the
New York Stock Exchange and the NASD is clearly newsworthy and relevant to our
ongoing coverage of those markets and her current job as the chairman of the S.E.C.
Thank you for your assistance.

Very Truly Yours,

Stephen Labaton

# The New York Times

This copy is for your personal, noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears next to any article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this article now.



January 12, 2009

## S.E.C. Choice Is Sued Over a Merger of Regulators

**By STEPHEN LABATON**

WASHINGTON — Mary L. Schapiro, who appears this week at a confirmation hearing on her selection to head the Securities and Exchange Commission, has been accused in two lawsuits of making misleading statements to quickly complete a merger of regulatory organizations after which she received a 57 percent raise in her pay.

The merger involved the regulatory units of the New York Stock Exchange and the NASD two years ago. Ms. Schapiro was then head of the NASD, and she spent months traveling the country to persuade its 5,100 members to support it. The merger created a new self-regulatory organization, the Financial Industry Regulatory Authority, or Finra, where Ms. Schapiro is the chief executive. The Securities and Exchange Commission relies on Finra to police Wall Street.

Among the misstatements that she is accused of making is that the Internal Revenue Service had prohibited the NASD from paying each member more than $35,000 as part of the merger deal. Although an NASD proxy statement issued while the deal was pending said that the I.R.S. would not permit the organization to give more compensation to members, the I.R.S. did not actually issue a ruling on the matter until March 2007, long after the deal closed and three months after the members voted to approve it.

Lawyers representing Ms. Schapiro, Finra and other senior executives have fought vigorously to keep the I.R.S. ruling — and court references to details of that ruling — under seal. Last January, a federal judge in New York denied a request by The New York Times to unseal the ruling and other documents in the case.

Ms. Schapiro's lawyer has denied the lawsuits' allegations and, in a recent interview said that the second suit, filed shortly after her selection, is an opportunistic effort to pressure the defendants to settle. The first, dismissed by a federal district judge in New York, is on appeal.

At the S.E.C., Ms. Schapiro would be leading a government regulator that has been battered by setbacks, including its failure to uncover the apparent long-running fraud at Bernard L. Madoff Investment Securities. A recent report by the S.E.C.'s inspector general said the agency had failed to adequately police the markets and regulate Wall Street's largest investment banks. Congressional critics have said the S.E.C.'s shortcomings contributed to the financial crisis.

The strongest proponents of the merger that created Finra were the more than 200 firms that were members of both the NASD and the New York Stock Exchange. The merger significantly lowered their regulatory expenses, but many of the smaller members were concerned about what benefits they might receive from it.

In an effort to get enough votes from the smaller firms, NASD offered each member $35,000, for a total of about $178 million, and a smaller commitment to reduce future assessments.

Executives said that amount was derived from a calculation of efficiencies from merging the organizations. NASD listed its total outstanding equity in an annual report of more than $1.6 billion. NASD officials, including Ms. Schapiro, said then that the organization could not make a greater payment because the I.R.S. bad opposed it because the NASD is nonprofit.

The lawsuits challenge that assertion, saying that evidence that remains sealed undermines the NASD's description of the I.R.S. ruling. Also sealed is an independent fairness opinion on the merger by the investment bank Houlihan Lokey Howard and Zukin Financial Advisors.

"Our cases raise questions about the transparency, truthfulness and candor of the NASD and its leadership in a major financial transaction with its own members," said Jonathan W. Cuneo, the lead lawyer in both cases for the member firms. "It's certainly ironic that the case involves the NASD, which is charged with policing those values in others."

Defense lawyers said in court papers and an interview that no material misrepresentations were made. They assert that the top executives of the organization, as regulators, are entitled to absolute immunity from lawsuits. They say that the members of the NASD were not entitled to greater compensation because they do not have the same rights as shareholders of a corporation.

"These lawsuits are meritless, and the second suit is just a dressed-up version of the first one that was rejected by a federal judge," said F. Joseph Warin, a lawyer representing Finra and Ms. Schapiro. "The lawyers are the same, and the arguments are virtually identical. The second suit was filed days after Ms. Schapiro was nominated to become chairman of the S.E.C. It looks to me like a desperate effort to leverage Mary's nomination to squeeze money out of Finra before her confirmation vote — a last-second Hail Mary pass."

Mr. Cuneo said that the second lawsuit was in the works long before the announcement of Ms. Schapiro's appointment and that its filing had nothing to do with her selection.

Herb Perone, a spokesman at Finra, said that following the customary practice of presidential appointees, Ms. Schapiro would not comment about the case while her confirmation proceedings were pending. The Senate banking committee is to consider her appointment on Thursday.

Lawyers involved in the proceeding say they have not been asked about the lawsuits by either the Obama transition team or the Senate banking committee.

An official at the Obama transition said that the lawsuit had been examined during the vetting process and that Ms. Schapiro would not have been selected if it were seen as a problem.

Kate Szostak, a spokeswoman for the Senate banking committee, said it would study Ms. Schapiro's record as a regulator, including Finra's supervision of the Madoff firm and her role in the merger of the NASD and the New York Stock Exchange. Ms. Schapiro has extensive regulatory experience. She served for six years as a commissioner at the S.E.C. before becoming chairwoman of the Commodity Futures Trading Commission in 1994. She arrived at the NASD in 1996 to lead its regulatory arm.

Both suits were filed as class actions on behalf of most members of Finra. The first was filed by Standard Investment Chartered. Federal District Judge Shirley Wohl Kram of New York dismissed that suit a year later without addressing the underlying allegations. The dismissal has been appealed to the United States

Court of Appeals for the Second Circuit, in New York.

A second lawsuit by Benchmark Financial Services, was filed three weeks ago in federal district court in New York. Benchmark was founded by Edward A. H. Siedle, a former lawyer at the S.E.C. who investigates pension fraud and other financial abuses. Mr. Siedle has done legal and investigative work for plaintiffs that have sued companies, and he sued the NASD in 2002 after it blocked him from publishing a book about disciplinary proceedings against member firms.

"This case is about a corporate transaction effectuated by deception," the complaint in the latest case said. "The officer defendants stood to gain substantially by the transaction, in terms of enormously higher compensation and benefits, vastly elevated prestige and powers resulting from the virtual monopoly regulatory authority created by the transaction, and the higher degree of control over the board of the consolidated entity."

After the merger, Ms. Schapiro's total compensation rose to more than $3.1 million, from almost $2 million. The pay package, while not outsize by Wall Street standards, is large for a nonprofit organization. Mr. Perone, the Finra spokesman, said the raise was the result of Ms. Schapiro's promotion to a higher job. He said her predecessor had received about $6 million in compensation. Other top executives at the new entity received pay increases of around 20 percent after the merger.

This article has been revised to reflect the following correction:

Correction: April 4, 2009
An article on Jan. 12 about two lawsuits filed against Mary L. Schapiro, then the nominee to head the Securities and Exchange Commission, described incorrectly the background of Edward A. H. Siedle, whose company filed one of the complaints. Mr. Siedle has done legal and investigative work for plaintiffs that have sued companies, but he has not been a plaintiff against other companies over the years. This correction was submitted on Jan. 12, but went astray at The Times.

Copyright 2009 The New York Times Company

Privacy Policy | Search | Corrections | RSS | First Look | Help | Contact Us | Work for Us | Site Map