**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STANDARD INVESTMENT CHARTERED, INC., | |
| Plaintiff, | |
| v. | 07 Civ. 2014 (JSR) [ECF Case] |
| FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.; NYSE GROUP, INC.; MARY L. SCHAPIRO; RICHARD F. BRUECKNER; T. GRANT CALLERY; TODD DIGANCI; and HOWARD M. SCHLOSS, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
BY DEFENDANTS FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,
SCHAPIRO, BRUECKNER, CALLERY, DIGANCI, AND SCHLOSS**

John J. Flood (JF-2197)
FINANCIAL INDUSTRY REGULATORY
    AUTHORITY, INC.
1735 K Street, N.W.
Washington, D.C.  20006

Srinivas M. Raju
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801

Douglas R. Cox (DC-1962)
    *Counsel of Record*
F. Joseph Warin
Howard S. Hogan
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Fax: (202) 467-0539

Jennifer H. Rearden
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166

*Attorneys for Defendants Financial Industry Regulatory Authority, Inc.,
Schapiro, Brueckner, Callery, Diganci, and Schloss*

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ................................................................................................ 1

    I.      NASD's Critical Role In Regulating The Securities Industry .............................. 2

    II.     The Proposed Regulatory Consolidation ................................................................ 3

    III.    This Litigation .......................................................................................................... 4

    IV.    Proceedings Before The SEC .................................................................................. 5

    V.     The Second Amended Complaint ........................................................................... 9

ARGUMENT ..................................................................................................................... 9

    I.      The Court Lacks Subject Matter Jurisdiction Over This Dispute
         Because Standard Failed To Exhaust Its Remedies Under The
         Exchange Act. ......................................................................................................... 9

         A.     Standard Was Required To Exhaust The Exchange Act's
              Comprehensive Review Procedure. ......................................................... 11

         B.     Standard Failed To Exhaust And Has Abandoned Any
              Possibility Of Exhaustion. ........................................................................ 14

         C.     Standard Cannot Establish Any Exception To Exhaustion ..................... 16

    II.     This Court Lacks Subject Matter Jurisdiction Over Standard's Claims
         Because The Exchange Act Provides The Exclusive Procedure For
         Challenging NASD Rulemaking .......................................................................... 17

    III.    Standard's Claims Are Barred By Absolute Immunity. ..................................... 20

         A.     Self-Regulatory Organizations And Their Officers Are Immune
              From Private Damages Actions Challenging Their Regulatory
              Activities. ................................................................................................... 21

         B.     The Second Amended Complaint Demands Money Damages
              Based On NASD's Regulatory Functions, Directly Implicating
              Absolute Immunity. .................................................................................. 22

i

**TABLE OF CONTENTS** (cont'd)

**Page**

IV.  The Second Amended Complaint Fails To State A Claim Upon Which
Relief May Be Granted. .................................................................................. 25

    A.  Standard Has Failed To Allege Each Element Of Its Claims
With Particularity, As Federal Rule Of Civil Procedure 9(b)
Requires. ............................................................................................. 26

    B.  Standard Cannot Plead The Damages Or Causation Elements Of
Its Fiduciary Duty And Misrepresentation Claims Because
NASD Members Have No Claim To NASD's Assets............................ 27

        1.  Any Pecuniary Loss Was Not Caused By The Purported
Misrepresentations. .................................................... 28

        2.  Standard Was Not Damaged By The Alleged
Misrepresentations. .................................................... 29

    C.  The Misrepresentation Claim Must Be Dismissed Because
Standard Does Not Plead That It Relied On Any Alleged
Misrepresentations. .................................................................................. 30

    D.  Standard Has Not Adequately Pleaded Its Claims For Breach Of
Fiduciary Duty. ...................................................................................... 31

        1.  NASD's Officers And Directors Do Not Owe Any
Fiduciary Duties To NASD Member Firms.............................. 31

        2.  The Business Judgment Rule Bars Standard's Claims. .............. 32

    E.  Standard Has Failed To Allege Any Unjust Enrichment At Its
Expense. .................................................................................................. 34

CONCLUSION..................................................................................................... 35

## TABLE OF AUTHORITIES

**Cases**      **Page(s)**

*Am. Benefits Group, Inc. v. NASD*, 99 Civ. 4733 (JGK),
   1999 WL 605246 (S.D.N.Y. Aug. 10, 1999)........................................................ 10, 11, 21, 23

*Apace Commc'ns, Ltd. v. Burke*,
   522 F. Supp. 2d 509 (W.D.N.Y. 2007) ......................................................................... 26

*Aronson v. Lewis*,
   473 A.2d 805 (Del. 1984) ............................................................................................. 32

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) .......................................................................................... 11, 35

*B.F. Goodrich Co. v. Nw. Indus., Inc.*,
   424 F.2d 1349 (3d Cir. 1970) ...................................................................................... 19

*Barbara v. NYSE*,
   99 F.3d 49 (2d Cir. 1996) ................................................................... 10, 16, 17, 21, 22

*Barkan v. Amsted Indus., Inc.*,
   567 A.2d 1279 (Del. 1989) ........................................................................................... 34

*Bernard v. County of Suffolk*,
   356 F.3d 495 (2d Cir. 2004) ........................................................................................ 25

*Brehm v. Eisner*,
   746 A.2d 244 (Del. 2000) ............................................................................................ 33

*Bruan, Gordon & Co. v. Hellmers*,
   502 F. Supp. 897 (S.D.N.Y. 1980) .............................................................................. 10

*Brzoska v. Olson*,
   668 A.2d 1355 (Del. 1995) .......................................................................................... 29

*Cal. Save Our Streams Council v. Yeutter*,
   887 F.2d 908 (9th Cir. 1989) ....................................................................................... 20

*CETA Workers' Organizing Comm. v. City of New York*,
   617 F.2d 926 (2d Cir. 1980) ........................................................................................ 19

*Cook v. NASD Reg'n, Inc.*,
   31 F. Supp. 2d 1245 (D. Colo. 1998)........................................................................... 10

*Crosse v. BCBSD, Inc.*,
   836 A.2d 492 (Del. 2003) ............................................................................................ 32

## <u>TABLE OF AUTHORITIES</u> (cont'd)

**<u>Cases</u> (cont'd)**                                                                                                    **<u>Page(s)</u>**

*D'Alessio v. NYSE,*
    125 F. Supp. 2d 656 (S.D.N.Y. 2000) ................................................................. 21, 22, 24, 25

*D'Alessio v. NYSE,*
    258 F.3d 93 (2d Cir. 2001) ............................................................................... 2, 21, 24

*Daly v. Castro Llanes,*
    30 F. Supp. 2d 407 (S.D.N.Y. 1998) ..................................................................... 26

*Datek Sec. Corp. v. NASD,*
    875 F. Supp. 230 (S.D.N.Y. 1995) ....................................................................... 10

*Desiderio v. NASD,*
    191 F.3d 198 (2d Cir. 1999) ........................................................................ 12, 17, 18

*Dexter v. Depository Trust & Clearing Corp.,*
    406 F. Supp. 2d 260 (S.D.N.Y. 2005) ................................................................... 24

*Dexter v. Depository Trust & Clearing Corp.,*
    219 F. App'x 91 (2d Cir. 2007) ........................................................................... 21

*DL Capital Group, LLC v. NASDAQ Stock Mkt., Inc.,*
    409 F.3d 93 (2d Cir. 2005) .......................................................... 11, 21, 22, 24, 25

*Farahpour v. DCX, Inc.,*
    635 A.2d 894 (Del. 1994) ................................................................................. 28

*Feins v. Am. Stock Exch., Inc.,*
    81 F.3d 1215 (2d Cir. 1996) ........................................................................... 17, 18

*First Jersey Sec., Inc. v. Bergen,*
    605 F.2d 690 (3d Cir. 1979) .......................................................................... 9, 15, 16

*Grace v. Rosenstock,*
    228 F.3d 40 (2d Cir. 2000) ................................................................................ 30

*Green v. Brantley,*
    981 F.2d 514 (11th Cir. 1993) ............................................................................ 20

*Gugliaro v. N.Y. Coffee, Sugar & Cocoa Exch.*, 96 Civ. 4942 (JSM),
    1997 WL 109442 (S.D.N.Y. Mar. 11, 1997) ......................................................... 21

*Guitard v. U.S. Sec'y of the Navy,*
    967 F.2d 737 (2d Cir. 1992) .............................................................................. 16

## TABLE OF AUTHORITIES (cont'd)

**Cases** (cont'd)                                                                                                   **Page(s)**

*Gurfein v. Ameritrade, Inc.*,
  411 F. Supp. 2d 416 (S.D.N.Y. 2006) ................................................................. 11, 21, 23, 24

*Hayden v. NYSE*,
  4 F. Supp. 2d 335 (S.D.N.Y. 1998) ....................................................................... 10, 17

*Hibbard Brown & Co. v. NASD*, Civ. A. No. 94-285-SLR,
  1994 WL 827778 (D. Del. Oct. 6, 1994) ................................................................... 12

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
  906 A.2d 766 (Del. 2006) ................................................................................... 28, 29

*In re Marsh & McClennan Cos. Sec. Litig.*,
  501 F. Supp. 2d 452 (S.D.N.Y. 2006) ...................................................................... 26, 30

*In re NYMEX S'holder Litig.*, Nos. 3621-VCN, 3835-VCN,
  2009 WL 3206051 (Del. Ch. Sept. 30, 2009) ............................................................ 31, 34

*In re NYSE Specialists Sec. Litig.*,
  503 F.3d 89 (2d Cir. 2007) ...................................................................................... 25

*In re Parmalat Sec. Litig.*,
  501 F. Supp. 2d 560 (S.D.N.Y. 2007) ....................................................................... 26

*In re Santa Fe Pac. Corp. S'holder Litig.*,
  669 A.2d 59 (Del. 1995) .......................................................................................... 32

*In re Series 7 Broker Qualification Exam Scoring Litig.*,
  548 F.3d 110 (D.C. Cir. 2008) ....................................................................... 10, 17, 18, 21, 25

*In re Walt Disney Co. Deriv. Litig.*,
  906 A.2d 27 (Del. 2006) .......................................................................................... 33

*In re Wheelabrator Techs., Inc. S'holders Litig.*,
  663 A.2d 1194 (Del. Ch. 1995) ............................................................................... 33

*J. Egan & Co. v. Phila. Stock Exch.*,
  715 F. Supp. 686 (E.D. Pa. 1989) ............................................................................ 10

*Jackson Nat'l Life Ins. Co. v. Kennedy*,
  741 A.2d 377 (Del. Ch. 1999) ............................................................................... 34, 35

*Kakar v. Chi. Bd. Options Exch.*,
  681 F. Supp. 1039 (S.D.N.Y. 1988) .......................................................................... 12

## <u>TABLE OF AUTHORITIES</u> (cont'd)

**<u>Cases</u>** (cont'd)                                                                                                    **Page(s)**

*Kramer v. Time Warner, Inc.*,
   937 F.2d 767 (2d Cir. 1991) ..................................................................................... 6

*LaFaro v. N.Y. Cardiothoracic Group, PLLC*,
   570 F.3d 471 (2d Cir. 2009) ..................................................................................... 20

*Mandelbaum v. N.Y. Mercantile Exch.*,
   894 F. Supp. 676 (S.D.N.Y. 1995) ......................................................................... 21

*Marchiano v. NASD*,
   134 F. Supp. 2d 90 (D.D.C. 2001) .......................................................................... 10

*Matsumura v. Benihana Nat'l Corp.*,
   542 F. Supp. 2d 245 (S.D.N.Y. 2008) .................................................................... 26

*McKart v. United States*,
   395 U.S. 185 (1969).................................................................................................. 15

*McLaughlin, Piven, Vogel, Inc. v. NASD*,
   733 F. Supp. 694 (S.D.N.Y. 1990) ......................................................................... 10

*McMahon v. New Castle Assoc.*,
   532 A.2d 601 (Del. Ch. 1987) ................................................................................. 31

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. NASD*,
   616 F.2d 1363 (5th Cir. 1980) ................................................................................... 9

*Merritt v. Shuttle, Inc.*,
   187 F.3d 263 (2d Cir. 1999) ..................................................................................... 19

*Merritt v. Shuttle, Inc.*,
   245 F.3d 182 (2d Cir. 2001) ..................................................................................... 19

*MFS Sec. Corp. v. NYSE*,
   277 F.3d 613 (2d Cir. 2002) ..................................................................................... 21

*MM & S Fin., Inc. v. NASD*,
   364 F.3d 908 (8th Cir. 2004) ................................................................................... 18

*Oberly v. Kirby*,
   592 A.2d 445 (Del. 1991) ........................................................................................ 34

*Orman v. Cullman*,
   794 A.2d 5 (Del. Ch. 2002) ............................................................................... 32, 33

## TABLE OF AUTHORITIES (cont'd)

**Cases** (cont'd)                                                                                                    **Page(s)**

*Penn. Employee Benefit Trust Fund v. Zeneca, Inc.*, No. Civ. 05-075-SLR,
    2005 WL 2993937 (D. Del. Nov. 8, 2005) ................................................................. 30

*Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*,
    400 U.S. 62 (1970)......................................................................................................... 20

*Scher v. NASD*,
    218 F. App'x 46 (2d Cir. 2007) ..................................................................................... 21

*Schock v. Nash*,
    732 A.2d 217 (Del. 1999) ............................................................................................... 35

*SEC v. WACO Fin., Inc.*,
    751 F.2d 831 (6th Cir. 1985) ......................................................................................... 10

*Sparta Surgical Corp. v. NASD*,
    159 F.3d 1209 (9th Cir. 1998) ....................................................................... 21, 22, 25, 31

*Standard Inv. Chartered, Inc. v. NASD*, 07 Civ. 2014,
    2007 WL 1296712 (May 2, 2007) ............................................................................. *passim*

*Standard Inv. Chartered, Inc. v. NASD*, 07 Civ. 2014,
    2007 WL 2049730 (July 13, 2007)................................................................................... 5

*Standard Inv. Chartered, Inc. v. NASD,*
    560 F.3d 118 (2d Cir. 2009) ............................................................................. 1, 9, 10, 22

*Steinman v. Levine*, Civ. A. 19107,
    2002 WL 31761252 (Del. Ch. Nov. 27, 2002) ............................................................. 27

*Swirsky v. NASD*,
    124 F.3d 59 (1st Cir. 1997)................................................................................... 9, 11, 15

*Telecomms. Research & Action Ctr. v. FCC*,
    750 F.2d 70 (D.C. Cir. 1984)......................................................................................... 18

*Total Care Physicians, P.A. v. O'Hara*,
    798 A.2d 1043 (Del. Super. 2001).................................................................................. 34

*Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*,
    906 A.2d 168 (Del. Ch. 2006) ....................................................................................... 34

*Tuosto v. Philip Morris USA Inc.*, 05 Civ. 9384 (PKL),
    2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007)................................................................. 27

# TABLE OF AUTHORITIES (cont'd)

**Cases** (cont'd)                                                                                    **Page(s)**

*Unisuper Ltd. v. News Corp.*, No. 1966-N,
    2005 WL 3529317 (Del. Ch. Dec. 20, 2005)...................................................... 28, 29, 30

*Welch v. TD Ameritrade Holding Corp.*, 07 Civ. 6904 (RJS),
    2009 WL 2356131  (S.D.N.Y. July 27, 2009) ............................................................ 26

*Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.*,
    379 U.S. 411 (1965)....................................................................................................... 19

*Wier v. Howard Hughes Med. Inst.*,
    407 A.2d 1051 (Del. Ch. 1979) .................................................................................... 28

*Yellow Forwarding Co. v. Atl. Container Line*,
    668 F.2d 350 (8th Cir. 1981) ....................................................................................... 19

## Statutes

15 U.S.C. § 78c ........................................................................................................................ 3, 22

15 U.S.C. § 78*o*-3 ....................................................................................................... 2, 12, 23, 31

15 U.S.C. § 78s ...................................................................................................................... *passim*

15 U.S.C. § 78y ................................................................................................................... 3, 15, 19

26 U.S.C. § 501 ........................................................................................................................... 28

## Rules

Fed. R. Civ. P. 9(b) ................................................................................................................. 26, 27

## Other Authorities

Richard J. Pierce, Jr., *Administrative Law Treatise* (4th ed. 2002) .............................................. 19

SEC Release No. 34-2211 (Aug. 7, 1939) .................................................................................. 12

SEC Release No. 34-39326 (Nov. 14, 1997) .............................................................................. 23

SEC Release No. 34-55495 (Mar. 20, 2007) ................................................................................ 5

SEC Release No. 34-56145 (July 26, 2007) ........................................................... 6, 7, 10, 13, 20

SEC Release No. 34-56145A (May 30, 2008).................................................................. 8, 13, 20

Defendants Financial Industry Regulatory Authority, Inc. ("FINRA"), Mary Schapiro, Richard Brueckner, Grant Callery, Todd Diganci, and Howard Schloss (collectively, the "FINRA Defendants") respectfully submit that, under controlling precedent, the second amended complaint ("SAC") should be dismissed.

Although masquerading as a standard corporate-governance action, this suit challenges a rulemaking by FINRA's predecessor, National Association of Securities Dealers, Inc. ("NASD"), to implement a regulatory consolidation of NASD and certain regulatory functions performed by NYSE Regulation. Plaintiff Standard Investment Chartered, Inc. ("Standard") seeks to evade a review process designed by Congress in the Securities Exchange Act of 1934. This Court dismissed the first amended complaint because Standard had failed to exhaust those remedies. The Second Circuit left the dismissal order in place, and remanded for this Court to consider whether Standard subsequently had exhausted. The SAC confirms that Standard still has failed to exhaust its Exchange Act remedies. Standard's claims are also barred by absolute immunity. Each of these doctrines provides a complete defense. In addition, Standard has not alleged the elements of its claims as a matter of state law, nor with the necessary particularity.

## FACTUAL BACKGROUND

NASD proposed by-law amendments that would allow it to assume certain regulatory functions then performed by NYSE Regulation; after a majority of NASD members voted in favor of the by-law amendments, they were approved by the Securities and Exchange Commission ("SEC"). As this Court recognized in dismissing the first amended complaint, only upon approval by the SEC could any objector even potentially sustain harm from the by-law amendments. *See* Dkt. Entry 71, 2007 WL 1296712, at \*7 (May 2, 2007) ("*Standard*"), *appeal dismissed as moot*, 560 F.3d 118 (2d Cir. 2009). Standard commented on the by-law amendments before the SEC, arguing (as it does here) that NASD secured member approval

through allegedly misleading statements, but it voluntarily abandoned the Exchange Act's review procedure before completion.

## I.     NASD's Critical Role In Regulating The Securities Industry

NASD is a self-regulatory organization ("SRO"), a key part of the comprehensive system crafted by Congress for regulating the securities markets.[1]  NASD is a not-for-profit Delaware corporation, registered with the SEC as a national securities association.  *See* 15 U.S.C. §§ 78*o*-3, 78s(a)(1).  NASD has members but no stock.  Schapiro, Callery, Diganci, and Schloss were officers of NASD, and Brueckner was the lead governor of NASD's Board of Governors.

Pursuant to the Exchange Act, NASD and other SROs conduct the daily regulation and administration of the securities industry, under the close supervision of the SEC.  *See D'Alessio v. NYSE*, 258 F.3d 93, 105 (2d Cir. 2001).  The Exchange Act gives NASD the power to propose rules, by-laws, and other regulations for the conduct and governance of its regulatory functions.  With limited exceptions not relevant here, the SEC must approve all NASD by-laws and rules before they are implemented.  *See* 15 U.S.C. § 78s(b)(1).  Indeed, the SEC is empowered to write or amend NASD's rules on its own initiative.  *Id.* § 78s(c).

The Exchange Act also regulates the content of NASD's rules and by-laws.  With particular significance for this case, the by-laws must:

- "assure a fair representation of [NASD's] members in the selection of its directors and administration of its affairs";
- "provide for the equitable allocation of reasonable dues, fees, and other charges among members"; and
- "[be] designed to prevent fraudulent and manipulative acts and practices, [and] to promote just and equitable principles of trade."

*Id.* § 78*o*-3(b)(4)–(6).

---

[1]  After the regulatory consolidation at issue in this litigation, NASD changed its name to FINRA.  For ease of reference, this brief refers to the entity as NASD throughout.

Once NASD approves a proposed change to its rules, by-laws, or certificate of incorporation, *see id.* § 78c(a)(27), it files the proposal with the SEC for its review.  The SEC solicits public comments on the proposed change and then conducts a review to verify that the proposal satisfies the Exchange Act's substantive and procedural requirements.  *Id.* § 78s(b)(1).  If the SEC decides to approve a proposed rule change, it publishes a detailed statement of its reasons in the *Federal Register*.  *Id.* § 78s(b)(2)(A).  Any party aggrieved by the SEC's decision must initiate a proceeding directly in a federal court of appeals—either the D.C. Circuit or the objector's home circuit.  *Id.* § 78y(a)(1).

## II.    The Proposed Regulatory Consolidation

In November 2006, NASD and the New York Stock Exchange ("NYSE") announced a plan to consolidate their "member regulation" functions, which include registering broker-dealer firms to participate in the securities industry and policing those firms' compliance with the federal securities laws and SRO rules.  Before this regulatory consolidation, firms that operated within both NASD's and NYSE's jurisdictions were obliged to comply with the rules and regulatory commands of both SROs, and the overlapping regulation gave rise to avoidable costs and inefficiencies.  The regulatory consolidation was designed to increase efficiency by making a single SRO the sole private-sector provider of member regulation for securities firms that do business with the public.  NYSE would continue to perform its "market regulation" functions.

To accommodate the regulatory consolidation, NASD's Board of Governors proposed a set of amendments to NASD's by-laws that, among other things, would modify the structure of the Board.  NASD called a special meeting of its membership to vote on the by-law amendments and circulated a proxy statement to all voting NASD members.  The proxy statement explained that, although member approval of the amendments would be a precondition to "closing" the regulatory consolidation, members were being asked to vote *only* on the by-law amendments, not

the consolidation itself.  It also explained that NASD anticipated substantial cost savings from the consolidation and proposed to share these savings with members by making a one-time payment to each NASD member of $35,000, and by reducing their annual dues going forward.

Because NASD would lose its tax-exempt status if it paid a dividend or similar distribution to its members, the proxy statement explained, both the payment and the reduction would "be funded by—and therefore limited by—the expected value of the incremental cash flows that will be produced by the consolidation transaction."  Proxy Statement at 7, *quoted in* SAC ¶ 108, Dkt. Entries 171, 173.  NASD further explained that "[a] larger payment [than $35,000] is not possible" because the payment could not exceed the anticipated savings, and because the Internal Revenue Service ("IRS") would have to approve the payment, the reduction, and the transaction as consistent with NASD's tax-exempt status.  *Id.*

On January 19, 2007, NASD's member firms approved the proposed by-law amendments.  *See Standard*, 2007 WL 1296712, at *1.

### III.    This Litigation

Pursuant to the Exchange Act's rulemaking process, the proposed by-law amendments did not take effect because a further step—SEC approval—was necessary.  Despite this, Standard sought to bypass the Exchange Act's procedure by challenging the amendments in this Court.  Standard sued, alleging that the defendants misrepresented various facts in securing approval of the by-law amendments, and threatening to seek an injunction to stop the regulatory consolidation.  In both its initial and first amended complaint, Standard pleaded claims for breach of fiduciary duties, negligent misrepresentation, and unjust enrichment, alleging (among numerous other purported misrepresentations) that the proxy statement falsely "impl[ied] that . . . $35,000 was the maximum amount" that could be paid to members.  *See* Compl. ¶¶ 32–33, Dkt. Entry 1; 1st Am. Compl. ¶ 42, Dkt. Entries 42–43.

This Court dismissed Standard's complaint for lack of jurisdiction.  *See Standard*, 2007 WL 1296712; *see also* Dkt. Entry 109, 2007 WL 2049730 (July 13, 2007) (denying reconsideration).  The Court held that the SEC was the proper forum for Standard's allegations: Because "[t]he Exchange Act authorizes the SEC to exercise a significant oversight function over the rules and activities of [SROs]," and sets up a "tiered review process" through which that oversight proceeds, challenges to anything that is "part of [NASD] rulemaking" *must* use that tiered review process.  *Standard*, 2007 WL 1296712, at *4–*6.  The Court held that Standard's allegations were squarely within the SEC's review power because they attacked the "procedures incident to [an NASD] rulemaking."  *Id.* at *2.

The Court made several significant legal determinations that are equally relevant to the SAC.  Although Standard claimed it was entitled to "Members' Equity," the Court emphasized that "NASD's articles of incorporation clearly state that . . . 'no part of its net revenues or earnings shall inure to the benefit of any . . . member,'" and that "Standard has not provided any support for the proposition that it is entitled to NASD assets."  *Standard*, 2007 WL 1296712, at *7.  The Court also recognized that "Section 19(c) of the Exchange Act provides the SEC with the power to sua sponte amend the rules of an SRO" and therefore that "the SEC theoretically ha[d] the authority under section 19(c) to sua sponte impose the By-Law amendments at issue here without a vote of the NASD membership."  2007 WL 1296712, at *6 (quoting 15 U.S.C. § 78s(c)).  With respect to Standard's damages claim, the Court held that "the Consolidation's consummation," which would occur only after SEC approval of the by-law amendments, was "the very condition that would cause [Standard's] speculative 'monetary' damages."  *Id.* at *7.

## IV.     Proceedings Before The SEC

Following the member vote, NASD submitted the by-law amendments to the SEC, which published them and invited public comment.  *See* SEC Release No. 34-55495 (Mar. 20, 2007).

Standard submitted multiple comments to the SEC, claiming (among other things) that the proxy statement had been materially misleading.[2]  In response to the comments, the SEC "requested that [NASD] provide additional information about the disclosures regarding the $35,000 payment noted in the proxy statement."  SEC Release No. 34-56145 (July 26, 2007) ("SEC Order"), at 70.  NASD submitted a detailed explanation of the basis for its statement that "[a] larger payment [than $35,000] is not possible," including a letter directly addressing Standard's allegations; a letter from expert tax counsel explaining the basis in the tax laws for NASD's conclusion that it was "not possible to increase the one-time $35,000 payment" in view of NASD's tax-exempt status; and a letter from Delaware counsel explaining that NASD's own corporate documents parallel the tax laws' prohibition on inurement of NASD's members.[3]

On July 26, 2007, the SEC approved the by-law amendments.  *See* SEC Order.  The SEC addressed the commenters' criticisms at length, devoting considerable attention to the comments "question[ing] the *adequacy of the disclosures* in the proxy statement, particularly with respect to

---

[2]  *See* Letter from Jonathan W. Cuneo and Richard D. Greenfield (May 4, 2007), *available at* http://www.sec.gov/comments/sr-nasd-2007-023/nasd2007023-79.pdf; Letter from Jonathan W. Cuneo and Richard D. Greenfield (June 11, 2007), *available at* http://www.sec.gov/comments/sr-nasd-2007-023/nasd2007023-84.pdf; Letter from Jonathan W. Cuneo and Richard D. Greenfield (July 26, 2007), *available at* http://www.sec.gov/comments/sr-nasd-2007-023/nasd2007023-89.pdf; *see also* Letter from Edward A.H. Siedle, Pres., Benchmark Fin. Serv., Inc. (Apr. 13, 2007) (similar letter on behalf of another NASD member), *available at* http://www.sec.gov/comments/sr-nasd-2007-023/nasd2007023-36.pdf.  All comment letters received by the SEC during the rulemaking are available at http://www.sec.gov/comments/sr-nasd-2007-023/nasd2007023.shtml.  This Court may take judicial notice of these publicly filed comments.  *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773–74 (2d Cir. 1991).

[3]  Letter from T. Grant Callery, Executive VP and Gen. Counsel, NASD (July 16, 2007), *available at* http://www.sec.gov/comments/sr-nasd-2007-023/nasd2007023-85.pdf; Letter from Mario J. Verdolini, Jr., Davis Polk & Wardwell (July 16, 2007), *available at* http://www.sec.gov/comments/sr-nasd-2007-023/nasd2007023-87.pdf; Letter from William J. Haubert, Richards, Layton & Finger (July 16, 2007), *available at* http://www.sec.gov/comments/sr-nasd-2007-023/nasd2007023-86.pdf.

the proposed $35,000 payment by NASD." *Id.* at 68–69 (emphasis added).  The SEC explained

that it "could not approve the proposed rule change" under the Exchange Act "if NASD has

failed . . . to comply with . . . its own Certificate of Incorporation or By-Laws" in promulgating

the by-law amendments.  *Id.* at 67.  As a result, even though the SEC "ordinarily does not make

determinations regarding state law issues," such a determination was "required" in this case

because "state law necessarily informs [the SEC's] findings under the Exchange Act."  *Id.* at 75.

   After reviewing the proxy statement in light of Standard's allegations, the SEC concluded

"that NASD has made a prima facie showing that these representations were not misleading and

that *NASD's explanation is uncontradicted by the commenters' submissions regarding this*

*matter*."  *Id.* (emphasis added).  The SEC found that "NASD complied with its Certificate of

Incorporation and By-Laws with respect to the proxy approval process and that the proposed

amendments to its By-Laws were properly approved by NASD members."  *Id.*  With that

finding, as well as the others required by the Exchange Act, the SEC approved the by-law

amendments.  *Id.* at 79.  The regulatory consolidation was concluded on July 30, 2007.

   Standard then began—but would never complete—the second tier of the Exchange Act's

review procedure by filing a petition for review of the SEC's approval order in the Ninth Circuit.

Although Standard claimed that the SEC violated the Administrative Procedure Act in several

respects, it did not challenge the legal order at issue—the SEC's approval of the by-law

amendments—but instead urged the Ninth Circuit to "modify the SEC's order to vacate its state-

law finding regarding the proxy statement."  Br. for Pet'r Standard Inv. Chartered ("9th Cir.

Br.") at 22, No. 07-73405 (9th Cir.).  Standard argued that "[t]here is no question that the order

can stand without that finding."  *Id.*  Standard thus urged the Ninth Circuit to edit the reasoning

of the SEC's approval order, but not to limit or change the approval itself.

Before the SEC's responsive brief was due in the Ninth Circuit, Standard and the SEC agreed that the SEC would expand on the reasoning supporting its order—but would not withdraw its approval of the by-law amendments—in exchange for Standard's promise to dismiss its Ninth Circuit petition. Standard and the SEC filed a joint motion requesting a remand for that purpose, in which Standard again emphasized that it "does not challenge the Commission's approval of the rule change." Joint Mot. at 3, No. 07-73405 (9th Cir.).

The SEC issued an amended order that reiterated its "finding that, as a federal matter under the Exchange Act, NASD complied with its Certificate of Incorporation and By-Laws with respect to the proxy approval process and that the proposed amendments to its By-Laws were properly approved by NASD members." SEC Release No. 34-56145A ("Am. Order"), at 1–2 (May 30, 2008). The SEC explained that "[t]his finding as to NASD compliance and members' approval is not a definitive adjudication under state law, such as a trial court would make after an evidentiary hearing, regarding the claim that the proxy statement was misleading," but emphasized that the agency had nonetheless exercised its authority to resolve questions of state law "to the extent that state law informs" the Exchange Act review. Id. Standard thereafter abandoned the Ninth Circuit appeal (and, with it, the Exchange Act's review procedures).

After the SEC approved the by-law amendments, Standard filed an appeal from this Court's decision dismissing its complaint, arguing that it had subsequently complied with the exhaustion requirement. See No. 07-3372-cv (2d Cir.). The defendants disputed this point, and the Second Circuit did not resolve the debate. Instead, confronted with the "apparently novel situation" where "a party whose suit was dismissed for failure to exhaust administrative remedies purported to exhaust those remedies prior to appellate consideration of an appeal from the judgment of dismissal," the Second Circuit "conclude[d] that the essential controversy has been

eliminated from the appeal, and the proper course is to dismiss the appeal as moot." 560 F.3d at

125. The Second Circuit did not vacate this Court's decision. *See id.* at 126 n.6.

## V.    The Second Amended Complaint

Following a status conference before this Court, Standard filed its SAC, naming as

defendants all but one of the defendants in its original and first amended complaints (NASD,

NYSE, Schapiro, and Brueckner), along with new defendants Callery, Diganci, and Schloss.

Counts I through III of the SAC allege that the FINRA Defendants breached fiduciary duties to

Standard and other NASD members by allegedly misrepresenting various aspects of the by-law

amendments, *see* SAC ¶¶ 155–168, and Count IV pleads a similar claim for intentional or

negligent misrepresentation against the FINRA Defendants, *id.* ¶¶ 169–172. Count V claims that

NYSE aided and abetted the previously alleged breaches of fiduciary duties, *id.* ¶¶ 173–177, and

Count VII [*sic*] alleges unjust enrichment against NYSE, Schapiro, Callery, Diganci, and

Schloss, *id.* ¶¶ 178–80. Standard seeks declaratory relief and monetary damages, *see id.* Prayer

for Relief, and it asks this Court to certify a class of all NASD members entitled to vote on the

by-law amendments that were not also members of NYSE, *id.* ¶ 145.

## ARGUMENT

## I.    The Court Lacks Subject Matter Jurisdiction Over This Dispute Because Standard Failed To Exhaust Its Remedies Under The Exchange Act.

This Court has already recognized (*Standard*, 2007 WL 1296712, at *3) that Standard

was required to exhaust the "complex self-regulatory scheme" that Congress created in the

Exchange Act "for those aggrieved by [SRO] action." *Merrill Lynch, Pierce, Fenner & Smith,*

*Inc. v. NASD*, 616 F.2d 1363, 1368 (5th Cir. 1980). "'[T]o prevent circumvention of established

procedures,'" *Swirsky v. NASD*, 124 F.3d 59, 62 (1st Cir. 1997) (quoting *First Jersey Sec., Inc. v.*

*Bergen*, 605 F.2d 690, 695 (3d Cir. 1979)), a party *must* raise disputes about SRO rulemaking

through the Exchange Act's comprehensive review process, under which the SEC—and, on appeal, a court of appeals—has the "opportunity to correct any deficiencies in the [SRO] proceedings," *SEC v. WACO Fin., Inc.*, 751 F.2d 831, 834 (6th Cir. 1985); *see also*, *e.g.*, *Standard*, 2007 WL 1296712, at *4 ("[T]he exhaustion doctrine is properly applied to NASD rulemaking, including the amendment of its By-Laws."); *Am. Benefits Group, Inc. v. NASD*, 99 Civ. 4733 (JGK), 1999 WL 605246, at *8 (S.D.N.Y. Aug. 10, 1999) (same).[4]

Standard's claims fall squarely within this exhaustion requirement: The SAC alleges procedural defects in an NASD rulemaking undertaken pursuant to the Exchange Act. The very allegations Standard wants this Court to consider were expressly rejected by the SEC, which concluded that the by-law amendments were "properly approved." SEC Order at 75. Yet even though Standard's claim for relief could have been fully and adequately addressed if the SEC decision had been vacated on appeal to the Ninth Circuit, Standard voluntarily abandoned the Exchange Act's review procedure before completion.

The Second Circuit "d[id] not decide whether exhaustion . . . has been adequately pursued" but instead emphasized that "[a]mong the remaining issues [for this Court] is whether Standard has exhausted its administrative remedies." *Standard*, 560 F.3d at 125. Even assuming Standard could have pursued its claims in court after exhausting the Exchange Act's review procedures, *but see infra* Part II (citing, *e.g.*, *In re Series 7 Broker Qualification Exam Scoring Litigation*, 548 F.3d 110, 114 (D.C. Cir. 2008), for the proposition that the Exchange Act's

---

[4]  *Accord Barbara v. NYSE*, 99 F.3d 49, 57 (2d Cir. 1996); *Hayden v. NYSE*, 4 F. Supp. 2d 335, 339 (S.D.N.Y. 1998); *Datek Sec. Corp. v. NASD*, 875 F. Supp. 230, 233 (S.D.N.Y. 1995); *McLaughlin, Piven, Vogel, Inc. v. NASD*, 733 F. Supp. 694, 696–97 (S.D.N.Y. 1990); *Bruan, Gordon & Co. v. Hellmers*, 502 F. Supp. 897, 905 (S.D.N.Y. 1980); *Marchiano v. NASD*, 134 F. Supp. 2d 90, 92–94 (D.D.C. 2001); *Cook v. NASD Reg'n, Inc.*, 31 F. Supp. 2d 1245, 1249 (D. Colo. 1998); *J. Egan & Co. v. Phila. Stock Exch.*, 715 F. Supp. 686, 687 (E.D. Pa. 1989).

review procedures are *exclusive*), the SAC demonstrates that Standard has failed to exhaust, and that failure warrants dismissal. *See*, *e.g.*, *Swirsky*, 124 F.3d at 64 (affirming dismissal because the "proper course of action, once the SEC denied [plaintiff's] appeal, was to appeal to this court," not sue in district court); *Am. Benefits Group*, 1999 WL 605246, at *8 (dismissing because the plaintiff "could have challenged the rules at least before the SEC and sought review in an appropriate court of appeals" but failed to do so).

### A.    Standard Was Required To Exhaust The Exchange Act's Comprehensive Review Procedure.

In dismissing the first amended complaint, this Court determined that Standard was required to exhaust its claims. *See Standard*, 2007 WL 1296712.  The Court emphasized that "challenges to NASD rulemaking, and the procedures incident to that rulemaking, are subject to the exhaustion doctrine." *Id.* at *2; *see also id.* at *6 (noting the SEC's "power to oversee the procedures incident to rulemaking").  Thus, "claims challenging the proxy solicitation incident to the proposed By-Law amendments" were subject to dismissal because "plaintiffs may not circumvent the exhaustion doctrine by framing their grievances as a challenge to the procedures incident to SRO rulemaking." *Id.* at *5–*6.

Standard asserts that it is not challenging the by-law amendments (*i.e.*, the rulemaking) themselves. *E.g.*, SAC ¶ 93(b).  The Court need not accept this legal conclusion, *see*, *e.g.*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), particularly since the *sole* issue in the vote Standard claims was tainted was whether to approve the by-law amendments, *e.g.*, SAC ¶ 13. But even if Standard's characterization were correct, the SAC indisputably challenges *communications* about the by-law amendments—and communication is a necessary part of NASD's regulatory functions. *See DL Capital Group, LLC v. NASDAQ Stock Mkt., Inc.*, 409 F.3d 93, 98 (2d Cir. 2005); *Gurfein v. Ameritrade, Inc.*, 411 F. Supp. 2d 416, 423 (S.D.N.Y.

2006).  Virtually *every* NASD regulatory action involves communication, and every NASD rulemaking involves notice to members.  Creating an exception for proxy statements and other communications to members would allow plaintiffs to subvert the exhaustion doctrine for SROs.

As noted above, the SEC approves by-law amendments only if (among other things) they "assure a *fair* representation of [NASD's] members in the . . . administration of its affairs."  15 U.S.C. § 78*o*-3(b)(4) (emphasis added).  The crux of Standard's allegations is that it was *not* fairly represented in this instance because of alleged deficiencies in the voting process.[5]  It would be absurd to say that, although the SEC examines whether the text of NASD's by-laws ensures fair representation, *see*, *e.g.*, SEC Release No. 34-2211 (Aug. 7, 1939), it would ignore allegations that NASD failed to abide by that principle in the specific rulemaking under review.  To the contrary, "the agency is required to ensure not only that the proposed By-Law amendments meet the goal of fair representation, but that the *procedure* by which the By-Law amendments were adopted also fulfills this goal."  *Standard*, 2007 WL 1296712, at *8 (emphasis added).  For that reason, this Court was properly "incredulous" that the SEC would approve the by-law amendments if the proxy statement had been flawed as Standard alleges.  *Id.*

Of course, the SEC did not ignore Standard's allegations.  Rather, it asked NASD to provide a supplemental letter addressing the proxy statement's discussion of the $35,000 member payment, and it then devoted an entire nine-page subsection of its 79-page approval

---

[5]  Standard's challenge to NASD's internal process for approving the proposed by-law amendments is thus tantamount to a claim that NASD violated its own rules—a claim that is within the exclusive jurisdiction of the SEC and for which there is no private right of action in district court.  *See* 15 U.S.C. § 78s(g)(1); *Desiderio v. NASD*, 191 F.3d 198, 208 (2d Cir. 1999); *Kakar v. Chi. Bd. Options Exch.*, 681 F. Supp. 1039, 1042 (S.D.N.Y. 1988) (agreeing that "enforcement [is] vested in the SEC" for an SRO's breach of its own rules (internal quotation marks omitted)); *Hibbard Brown & Co. v. NASD*, Civ. A. No. 94-285-SLR, 1994 WL 827778, at *1 (D. Del. Oct. 6, 1994) (allegations of procedural impropriety in an NASD notice to its members amounted to a claim that NASD had violated its own rules).

release to the subject.  SEC Order at 67–75.  After examining the proxy statement in detail, the

SEC accepted NASD's explanation, supported by letters from expert counsel, that "based on

'public IRS guidance, the terms of the initial agreement between NASD and NYSE Group, Inc.,

and the importance of preserving NASD's tax-exempt status, NASD concluded that $35,000 was

the maximum member payment that the IRS could be expected, with a sufficient degree of

confidence, to approve within the timeframe contemplated for the transaction.'"  *Id.* at 71

(quoting Callery Letter, *supra* note 3, at 3).  The Commission concluded that "NASD has made a

*prima facie* showing that these representations were not misleading and that NASD's explanation

is uncontradicted by the commenters' submissions regarding this matter."  *Id.* at 75; *see also id.*

(concluding that the by-law amendments were "properly approved by NASD members").[6]

Standard is plainly incorrect that the SEC "did not approve the Proxy Statement at issue here"

and "had no real interest in the state law issues posed by whether the Proxy Statement had

misrepresentations."  SAC ¶¶ 94(a), 123.  Standard's allegations about alleged omissions or

misrepresentations in connection with member approval of the by-law amendments raise issues

that fall within the SEC's expertise, and in fact were encompassed in the SEC's review of the

proposed amendments.

　　　　For this reason, Standard's claims that it "does not challenge any regulatory or

administrative decision or any other action" of the SEC, SAC ¶ 3, and that it raises "[n]o

challenge to any matter within the SEC's jurisdiction," *id.* ¶ 93(e), are foreclosed by the SEC's

---

[6]  The SEC's amended order does not change the analysis but instead confirms that Standard's
claims were before the SEC and reiterated the Commission's authority to resolve questions of
state law "to the extent that state law informs the Commission's finding that, as a federal matter
under the Exchange Act, NASD complied with its Certificate of Incorporation and By-Laws with
respect to the proxy approval process and that the proposed amendments to its By-Laws were
properly approved by NASD members."  Am. Order at 1–2.

own approval order.  It is hardly surprising, then, that Standard devotes much of its SAC to

attacking that approval order.  For instance, Standard complains that "[t]he SEC never requested,

received or considered the purportedly 'confidential' documents."  *Id.* ¶ 79.  This is an argument

that the SEC violated the Administrative Procedure Act by acting on inadequate information;

indeed, Standard initially pressed that argument before the Ninth Circuit, but it abandoned that

issue when it voluntarily dismissed the petition for review.  *See* 9th Cir. Br. 21, 34–38 (arguing

that "[t]he SEC violated the Administrative Procedure Act both by failing to obtain and review

the documents and by failing to explain its refusal to do so").  Similarly, Standard argues that,

"[b]ecause the SEC did not provide any notice of an intent to consider the proxy and governance

issues, no Class Member had reason to believe that the SEC was inviting comment on these

issues."  SAC ¶ 89.  This alleged failure did not stop Standard and other commenters from

submitting numerous letters challenging the adequacy of the proxy statement, *see supra* note 2,

but in any event Standard's argument—that the SEC did not provide proper notice before

addressing the adequacy of the proxy statement—also was raised and could have been pursued in

the Ninth Circuit as a basis for overturning the approval order, 9th Cir. Br. 32–34 (challenging

the SEC's "failure to notice the proxy statement issue for public comment").

## B.    Standard Failed To Exhaust And Has Abandoned Any Possibility Of Exhaustion.

Despite the long line of cases requiring exhaustion of the Exchange Act's review

procedure, and even though it could have obtained complete relief had it prevailed before the

Ninth Circuit, Standard voluntarily abandoned that process before completion.  Standard's

failure to exhaust requires dismissal of its suit.

The Exchange Act creates a two-tiered review procedure for challenging SRO

rulemaking, such as the by-law amendments at issue here.  *First*, a party seeking to challenge an

SRO's proposed rule must present its objections to the SEC. *See* 15 U.S.C. § 78s(b), (h). *Second*, if the SEC approves the proposed rule, any party aggrieved by the SEC's action can seek further review only in the courts of appeals. *Id.* § 78y(a)(3). Because the Exchange Act's comprehensive scheme provides two tiers of review, a party has not fully exhausted its Exchange Act remedies unless it has completed them both. *See Swirsky*, 124 F.3d at 62; *see also First Jersey Sec.*, 605 F.2d at 694–95 (noting that judicial review is the final component of the Exchange Act's "comprehensive system of review").

*Swirsky* is illustrative. Swirsky sued to challenge an NASD disciplinary proceeding, which (like rulemaking) is subject to "tiered" review under the Exchange Act. 124 F.3d at 61–62. Although he challenged NASD's decision before the SEC, Swirsky had not used the final tier of the review procedure: review in a court of appeals. *Id.* at 62. "Because Swirsky failed to invoke the [final] tier of the review process," the First Circuit held, "the district court lacked subject matter jurisdiction, and it properly dismissed Swirsky's complaint." *Id.*

In this case, no less than in *Swirksy*, Standard's appeal to the Ninth Circuit was a crucial component of the statutory scheme Congress adopted for overseeing NASD's regulatory functions. The Ninth Circuit had authority to "modify . . . or to set aside the [SEC's] order in whole or in part." 15 U.S.C. § 78y(a)(3). Had the Ninth Circuit "set aside" the SEC's order, that would have negated the outcome of the proxy ballot that Standard claims was tainted. Indeed, this Court has already determined that Standard's claim for damages from the by-law amendments would arise, if it all, only upon approval by the SEC. *Standard*, 2007 WL 1296712, at *7. In short, had it pursued its Ninth Circuit appeal, Standard could successfully have "vindicat[ed] [its] rights" through the Exchange Act procedures, obviating any need for this Court "to intervene." *McKart v. United States*, 395 U.S. 185, 195 (1969).

Rather than press its objections to the by-law amendments before the Ninth Circuit, Standard abandoned them.  By deliberately short-circuiting the congressionally prescribed process for reviewing SRO rulemaking, Standard fell well short of proper exhaustion.

### C.      Standard Cannot Establish Any Exception To Exhaustion.

Standard may seek to evade the exhaustion requirement by complaining that the SEC cannot award it money damages.  But the elaborate federal system of unified review under the Exchange Act does not come unraveled simply because a plaintiff asks for damages.  *See*, *e.g.*, *First Jersey Sec.*, 605 F.2d at 690 (dismissing a district court challenge to an NASD disciplinary hearing, even though the plaintiff also sought damages).  To the contrary, exhaustion is required so long as the agency affords the complainant a "'genuine opportunity for adequate relief.'" *Barbara v. NYSE*, 99 F.3d 49, 57 (2d Cir. 1996) (quoting *Guitard v. U.S. Sec'y of the Navy*, 967 F.2d 737, 741 (2d Cir. 1992)).  The Exchange Act's review procedure was more than adequate to deal with Standard's allegations.

"[A]n administrative agency's 'inability to grant full relief does not dispose of the exhaustion requirement.' . . ."  *Barbara*, 99 F.3d at 57 (quoting *Guitard*, 967 F.2d at 741). Instead, what constitutes "full relief" depends on the substance of the claim and the scheme of review with which it intersects.  For example, Mr. Barbara's claim for damages sought "compensation for past harms, rather than the reversal of an adverse Exchange determination," *id.*, because the alleged harm—arising out of an already-concluded and reversed disciplinary proceeding—could not have been undone through the Exchange Act process.  By contrast, Standard's allegations that approval of the by-law amendments was secured by misleading statements or omissions would have been fully vindicated if the by-law amendments had not been approved by the SEC or if Standard had successfully challenged the SEC's approval on appeal.  *Standard*, 2007 WL 1296712, at *7.  The claim that these statements were materially

misleading would be negated, because the outcome of the proxy ballot would cease to have any effect.  Because Standard could have avoided any damages by pursuing the Exchange Act's review procedure, its failure to exhaust warrants dismissal.

## II.    This Court Lacks Subject Matter Jurisdiction Over Standard's Claims Because The Exchange Act Provides The Exclusive Procedure For Challenging NASD Rulemaking.

The Exchange Act creates the *exclusive* procedure for challenging NASD rulemaking.  Congress created a two-tiered process for resolving disputes about SRO rulemaking but did not include *any* role for the district courts in this complex plan of regulatory and judicial review.  As a result, district courts lack subject matter jurisdiction over claims against SROs raising issues that "Congress intended to subject to the comprehensive enforcement structure created by the Exchange Act."  *Hayden v. NYSE*, 4 F. Supp. 2d 335, 340 (S.D.N.Y. 1998); *see also*, *e.g.*, *Desiderio v. NASD*, 191 F.3d 198, 207–08 (2d Cir. 1999).[7]

The Second Circuit's decision in *Feins v. American Stock Exchange, Inc.*, 81 F.3d 1215 (2d Cir. 1996), is illustrative.  Mrs. Feins was denied membership by the American Stock Exchange (AMEX) but obtained partial relief from the SEC, which set aside the denial for procedural improprieties and ordered AMEX to reexamine Feins's application.  (AMEX did so, and admitted Feins to membership.)  Feins asked the SEC for money damages for the delay and inconvenience incurred, but the SEC responded that it could not grant such relief.  81 F.3d at 1217.  Feins sued in district court for those damages, arguing that plaintiffs must be permitted to proceed separately from the Exchange Act's tiered review structure in order "to protect membership applicants against quasi-governmental abuse by erroneous decisions of" an SRO.

---

7  As the D.C. Circuit emphasized in *Series 7*, the same result holds true under a preemption analysis.  548 F.3d at 113–14; *cf. Barbara*, 99 F.3d at 59 (noting that preemption caselaw supports the court's conclusion that NYSE is absolutely immune).

*Id.* at 1222.  The Second Circuit refused to imply such a cause of action:  "[T]he statute *does* give Feins a cause of action," *i.e.*, "Feins might well have appealed to a federal court of appeals the SEC's refusal to require AMEX to admit her to membership under the terms of the original transaction."  *Id.* at 1223 (emphasis added).  That appeal is the sole avenue of judicial review because "the procedure and the remedy that Congress expressly provided accomplishes the goal of the statute."  *Id.* at 1222.  As the Second Circuit held in *Desiderio*, *Feins*'s reasoning extends to foreclose purported state-law claims like those at issue here.  *See* 191 F.3d at 207–08.

Similarly, the D.C. Circuit emphasized in *Series 7* that the Exchange Act's "multiple layers of review evince Congress's intent to direct challenges" into "avenues Congress created," "rather than allowing plaintiffs to sue under common law theories."  548 F.3d at 114.  For that reason, courts have "consistently found Congress's intent under the Exchange Act precludes common law causes of action."  *Id.*  Of particular significance here, the D.C. Circuit concluded:

> By specifically adopting an appeals process which does not provide monetary relief, Congress has displaced claims for relief based on state common law.  A common law suit for recovery of monetary damages is merely an 'attempt . . . to bypass the Exchange Act' and the process Congress envisioned.

*Id.* (quoting *MM & S Fin., Inc. v. NASD*, 364 F.3d 908, 912 (8th Cir. 2004)).

This rule holds true not only under the Exchange Act with respect to SROs, but under many similar two-step systems, in which a federal statute gives jurisdiction first to a federal agency and then to a federal court of appeals.  As the D.C. Circuit has explained, "[b]y lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise *sole* jurisdiction over the class of claims covered by the statutory grant of review power."  *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) (emphasis added).  Under those circumstances, a federal statute channeling review to the agency and then to a court of appeals creates the exclusive procedure for a judicial challenge, even if

18

there is no "express statutory command of exclusiveness." *Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 422 (1965). Indeed, "[o]nce a court concludes that an agency action is subject to circuit court review, it almost invariably holds that circuit court jurisdiction is exclusive in order to avoid potential confusion, conflict, and duplication of effort." 3 Richard J. Pierce, Jr., *Administrative Law Treatise* § 18.2, at 1330 (4th ed. 2002).[8]

This rule of law applies with added force here because the same statute that authorizes judicial review of SEC orders in the courts of appeals also provides that, "[o]n the filing of the petition [for review], the court has jurisdiction, *which becomes exclusive on the filing of the record*, to affirm or modify and enforce or to set aside the [SEC's] order in whole or in part." 15 U.S.C. § 78y(a)(3) (emphasis added).[9] This "exclusive" jurisdiction precludes collateral attacks on the administrative decision in district court, and thus avoids "unnecessary duplication and conflicting litigation" that would result in "different records, applications of different standards and conflicting determinations." *Whitney*, 379 U.S. at 422; *see also Yellow Forwarding Co. v. Atl. Container Line*, 668 F.2d 350, 354 (8th Cir. 1981). If the issues presented to the district court are "inescapably intertwined" with the merits of the agency order, *Merritt v. Shuttle, Inc.*, 187 F.3d 263, 270 (2d Cir. 1999), or if the relief sought would contradict the agency's decision, *B.F. Goodrich Co. v. Nw. Indus., Inc.*, 424 F.2d 1349, 1353–54 (3d Cir. 1970), the district court lacks subject matter jurisdiction, *see Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001)

---

[8] *See also*, *e.g.*, *CETA Workers' Organizing Comm. v. City of New York*, 617 F.2d 926, 935–36 (2d Cir. 1980). The Solicitor General has recently emphasized this point to the Supreme Court. *See* Br. for the United States at 15, *Free Enterprise Fund v. PCAOB*, No. 08-861 ("As this Court has explained, 'where Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive.'" (quoting *Whitney*, 379 U.S. at 420)).

[9] Standard abandoned its Ninth Circuit appeal only *after* the record had been filed.

(Sotomayor, J.) ("[S]tatutes . . . that vest judicial review of administrative orders exclusively in the courts of appeals also preclude district courts from hearing claims that are 'inescapably intertwined' with review of such orders.").[10]

Standard's allegations that member approval of the by-law amendments was secured by misleading statements and omissions is both "inescapably intertwined" with the SEC's approval of the amendments and would contradict the SEC's decision.  The SEC expressly determined that the by-law amendments were "properly approved" by NASD members and that the proxy materials "were not misleading."  SEC Order at 75; *see also* Am. Order at 1–2.  This Court could not grant relief to Standard without reevaluating—and overruling—these determinations.  This is precisely the sort of "collateral redetermination" in a "different and inappropriate forum" that is impermissible when Congress created an exclusive review procedure.  *See Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 72 (1970).[11]

## III.    Standard's Claims Are Barred By Absolute Immunity.

The complaint must be dismissed on the separate and independent ground of absolute immunity.  This Court and the Second Circuit have held time and again that SROs and their officers are absolutely immune from private damages lawsuits challenging conduct performed

---

[10]  *See also*, *e.g.*, *Green v. Brantley*, 981 F.2d 514, 521 (11th Cir. 1993) ("[A] plaintiff may not bypass that [exclusive] forum by suing for damages in district court."); *Cal. Save Our Streams Council v. Yeutter*, 887 F.2d 908, 912 (9th Cir. 1989) (district court lacks jurisdiction if "the practical effect of the action . . . is an assault on an important ingredient of" the agency decision).

[11]  Standard attempts to evade the Exchange Act's exclusive procedures through creative pleading, asserting that "[a]ll claims in the [SAC] arise under state law."  SAC ¶ 2; *see also id.* ¶ 40.  This legal conclusion is incorrect for the reasons explained above.  *See also*, *e.g.*, *LaFaro v. N.Y. Cardiothoracic Group, PLLC*, 570 F.3d 471, 475–76 (2d Cir. 2009) ("We are not bound to accept as true legal conclusions couched as factual allegations.").

under the aegis of their regulatory functions. That is precisely what Standard seeks to do in this lawsuit, and the action accordingly is barred.

### A.   Self-Regulatory Organizations And Their Officers Are Immune From Private Damages Actions Challenging Their Regulatory Activities.

In a long line of cases, the Second Circuit and this Court have held that SROs are absolutely immune from any private lawsuit for money damages attacking conduct that falls within the scope of their regulatory functions. *See*, *e.g.*, *DL Capital*, 409 F.3d at 94–97; *MFS Sec. Corp. v. NYSE*, 277 F.3d 613, 617 (2d Cir. 2002).[12] Numerous other courts have reached the same conclusion. *See*, *e.g.*, *Series 7*, 548 F.3d at 114–15; *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213–15 (9th Cir. 1998). "This is a matter not simply of logic but of intense practicality, since, in the absence of such immunity, [an SRO's] exercise of its quasi-governmental functions would be unduly hampered by disruptive and recriminatory lawsuits." *D'Alessio v. NYSE*, 125 F. Supp. 2d 656, 658 (S.D.N.Y. 2000) (Rakoff, J.), *aff'd*, 258 F.3d 93 (2d Cir. 2001); *see also DL Capital*, 409 F.3d at 97 ("[t]here is no question that an SRO and its officers are entitled to absolute immunity" for regulatory activities). Claims against an SRO are barred if they attack conduct that falls within the scope of the SRO's regulatory role, whether the lawsuits are pleaded as federal claims, state-law claims, statutory claims, or common-law claims. *See*, *e.g.*, *id.* at 96 (federal statutory and state common-law claims); *D'Alessio*, 258 F.3d at 100; *Barbara*, 99 F.3d at 52; *Sparta*, 159 F.3d at 1215; *see also* SAC ¶ 91 (conceding that FINRA is "immune from damages suits" when "it acts in an SRO capacity").

---

[12]  *See also*, *e.g.*, *Dexter v. Depository Trust & Clearing Corp.*, 219 F. App'x 91 (2d Cir. 2007), *summarily aff'g* 406 F. Supp. 2d 260 (S.D.N.Y. 2005); *Scher v. NASD*, 218 F. App'x 46 (2d Cir. 2007), *summarily aff'g* 386 F. Supp. 2d 402 (S.D.N.Y. 2005); *Gurfein*, 411 F. Supp. 2d at 420–24; *Am. Benefits Group*, 1999 WL 605246, at *8; *Gugliaro v. N.Y. Coffee, Sugar & Cocoa Exch.*, 96 Civ. 4942 (JSM), 1997 WL 109442, at *2–*4 (S.D.N.Y. Mar. 11, 1997); *Mandelbaum v. N.Y. Mercantile Exch.*, 894 F. Supp. 676, 679–80 (S.D.N.Y. 1995).

"[A]bsolute immunity is particularly appropriate in the unique context of [securities] self-regulation," because NASD and other SROs "perfor[m] a variety of regulatory functions that would, in other circumstances, be performed" by the SEC, which is itself immune from suit. *Barbara*, 99 F.3d at 59. The SEC exercises close supervision over the activities of SROs, scrutinizes their rulemaking, and can police any deviations from applicable law. *See Sparta*, 159 F.3d at 1214–15. The SEC's supervision, in turn, can be reviewed by the courts of appeals. Thus, when NASD and its officers are "engaged in conduct consistent with the quasi-governmental powers delegated to [NASD] . . . pursuant to the Exchange Act and the regulations and rules promulgated thereunder," they are absolutely immune. *DL Capital*, 409 F.3d at 99; *see also D'Alessio*, 125 F. Supp. 2d at 658 (holding that immunity applies to "any actions that are within the 'outer perimeter' of the performance of [an SRO's regulatory] functions").

### B. The Second Amended Complaint Demands Money Damages Based On NASD's Regulatory Functions, Directly Implicating Absolute Immunity.

Standard challenges NASD's proposal of by-law amendments pursuant to the rulemaking authority that the Exchange Act grants to SROs, and designed to govern NASD's future self-regulatory activities. As the Second Circuit acknowledged in dismissing Standard's appeal, the amendments were necessary to accommodate a "consolidation of regulatory functions" in which "[t]he regulatory organization created by the consolidation, known as FINRA, would become the sole U.S. private-sector provider of member firm regulation and enforcement," 560 F.3d at 120. Even Standard appears to concede as much. *E.g.*, SAC ¶ 8 (describing the "simplifying NYSE-NASD consolidation"). Every aspect of the proxy statement, the vote, and the SEC review process falls within the scope of NASD's power, conferred by the Exchange Act, to make rules that are binding on its members—and that have the force of federal law. 15 U.S.C. § 78s(b); *see id.* § 78c(a)(27) (NASD's by-laws are expressly part of that rulemaking power).

This Court and others have recognized that NASD's power to propose and adopt rules for its members is essential to its mission as a self-regulatory organization. *American Benefits Group* is closely analogous. NASD promulgated a rule governing which companies' shares could be quoted on the Over the Counter Bulletin Board. American Benefits Group, which became ineligible for quotation because of delinquent filings, sued to block the implementation of the new rule, on the theory that NASD had provided inadequate notice to the affected parties. This Court held that the suit was barred by NASD's absolute immunity, "because the NASD is entitled to absolute immunity when exercising its authority within the scope of its official duties," including the rulemaking at issue. *Am. Benefits Group*, 1999 WL 605246, at *8; *see also Gurfein*, 411 F. Supp. 2d at 423 ("Promulgating rules is an essential component of [an SRO's] regulatory authority," and absolute immunity therefore bars the plaintiff's challenge).

Furthermore, the *subject* of this rulemaking confirms that the by-law amendments squarely implicate NASD's duties under the Exchange Act. The securities laws require—and the SEC's review ensures—that NASD afford members "a fair representation . . . in the selection of its directors and administration of its affairs." 15 U.S.C. § 78*o*-3(b)(4). That is a key subject of the by-law amendments, which made changes to NASD's Board of Governors, and it was scrutinized by the SEC. Indeed, the SEC has taken a sharp interest in NASD's governance structure: Not only has the SEC been actively involved in previous changes to that structure, *see, e.g.*, SEC Release No. 34-39326 (Nov. 14, 1997), the SAC acknowledges that the regulatory consolidation at issue here "was endorsed structurally by the SEC," SAC ¶ 68.

In addition, *communications* between NASD and its members, or between NASD and the general public, are absolutely immune if germane to NASD's regulatory duties. Reporting on its regulatory actions—or, in this case, on *anticipated* regulatory actions, subject to the SEC's

approval—is an essential part of NASD's self-regulatory duties.  And the Second Circuit has accordingly held that *reporting* is just as protected as *regulating*.  *DL Capital*, 409 F.3d at 98 (reporting regulatory activity is a "critical and necessary part of [NASD's] regulatory powers" (internal quotation omitted)).  Applying *DL Capital*, this Court held in *Gurfein* that an SRO's statement of its intention to implement a regulatory proposal is an immune activity.  411 F. Supp. 2d at 423.  The allegedly misleading statements that Standard challenges are indistinguishable from these other SRO communications:  They announce and explain NASD's reasons for seeking approval of a particular set of proposals to improve its regulatory functions.

Standard asserts that absolute immunity is inappropriate because the regulatory consolidation was "related *exclusively* to the business affairs of NASD."  SAC ¶ 12 (emphasis added); *see also id.* ¶ 95 (noting that NASD obtained a protective order for its "confidential business information" in this litigation).  This conclusory characterization is demonstrably at odds with the SEC's regulatory interest in, and ultimate approval of, the regulatory consolidation.  *E.g.*, SAC ¶¶ 10, 65 (noting that "the SEC favored the simplifying of SRO regulation" and "effectively 'pre-cleared'" the by-law amendments).

In any event, the issue before this Court is whether the challenged conduct falls even within the "outer perimeter" (*D'Alessio*, 125 F. Supp. 2d at 658) of the FINRA Defendants' regulatory functions; because it plainly does, it is irrelevant whether NASD *also* had a business motive for the regulatory consolidation, or for protecting confidential information produced to Standard.  *See D'Alessio*, 258 F.3d at 98 (granting immunity to NYSE for regulatory decisions, even though the plaintiff had alleged that the challenged decisions were made to increase NYSE's profits); *see also Dexter v. Depository Trust & Clearing Corp.*, 406 F. Supp. 2d 260, 264 (S.D.N.Y. 2005) (allegations of a profit motive are irrelevant to the immunity analysis),

*aff'd*, 219 F. App'x 91 (2d Cir. 2007); *Sparta Surgical Corp.*, 159 F.3d at 1214–15 (applying immunity to NASD's decision to suspend trading, notwithstanding the plaintiff's allegation that NASD was acting merely as a for-profit "market facilitator").[13]

"[A]bsolute immunity must be absolute." *DL Capital*, 409 F.3d at 95. The Second Circuit has refused to make exceptions to immunity that would allow plaintiffs to circumvent the doctrine by inventive pleading, even in the face of alleged fraud. *Id.* at 99. If Standard could pursue a damages theory like the one it asserts, *every* NASD rulemaking proposal could be attacked by some ostensibly injured party challenging the accuracy, or the timing, or the level of detail of the proposing release. The immunity doctrine prohibits exactly this sort of litigation.

**IV.    The Second Amended Complaint Fails To State A Claim Upon Which Relief May Be Granted.**

As set forth above, Standard's purported state-law claims are barred by the body of federal law governing the conduct of an SRO's regulatory functions. Each cause of action can be dismissed as a matter of law, on either of those two independent grounds.

Even considered solely under Delaware law, and assuming state-law claims can be pleaded in the face of the Exchange Act's tiered review procedure, the SAC must be dismissed

---

[13]  Standard is similarly mistaken in claiming that absolute immunity is inappropriate because the regulatory consolidation was purportedly designed to allow "huge salaries and rich compensation packages" for NASD's officers. SAC ¶ 35; *see also, e.g., id.* ¶ 129. It is well-settled that "absolute immunity applies even where the challenged conduct was motivated by a wrongful motive[,] as such intent is irrelevant." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 98 n.3 (2d Cir. 2007) (Sotomayor, J.) (quoting *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004)). The doctrine "accords protection from . . . any judicial scrutiny of the motive for and reasonableness of official action, even where the challenged conduct was motivated by a wrongful motive or even malice." *NYSE Specialists*, 503 F.3d at 95–96; *see also D'Alessio*, 125 F. Supp. 2d at 658 ("Nor may a litigant avoid the bar of this immunity simply by making allegations of bad faith, conspiracy, or malice."); *Series 7*, 548 F.3d at 115 ("Where courts accord immunity to SROs, the protection has been absolute. Courts have declined to craft exceptions for bad faith, fraud, negligence, or even gross negligence." (citations omitted)).

because Standard fails to state a claim.  Standard has not alleged each element of its claims with

particularity, as required by Federal Rule of Civil Procedure 9(b).  Indeed, Standard has not

alleged *at all* several critical elements of each claim.

> **A.     Standard Has Failed To Allege Each Element Of Its Claims With
>         Particularity, As Federal Rule Of Civil Procedure 9(b) Requires.**

Each of Standard's causes of action against the FINRA Defendants is subject to the

heightened pleading standards for fraud under Rule 9(b).  Under Rule 9(b), "[n]egligent

misrepresentation claims must be pleaded with particularity," *In re Marsh & McClennan Cos.*

*Sec. Litig.*, 501 F. Supp. 2d 452, 495 (S.D.N.Y. 2006), as must "allegations of . . . breach of

fiduciary duty consisting of fraud by a fiduciary," *In re Parmalat Sec. Litig.*, 501 F. Supp. 2d

560, 573 (S.D.N.Y. 2007), *aff'd sub nom. Pappas v. Bank of Am. Corp.*, 309 F. App'x 536 (2d

Cir. 2009); *see also Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 252 (S.D.N.Y.

2008) (applying "the rigors of Rule 9(b)" to negligent misrepresentation and breach of fiduciary

duty claims).  Similarly, Rule 9(b) applies to unjust enrichment claims where, as here, those

claims are "premised on fraud."  *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y.

1998); *see also*, *e.g.*, *Welch v. TD Ameritrade Holding Corp.*, 07 Civ. 6904 (RJS), 2009 WL

2356131, at *22 (S.D.N.Y. July 27, 2009) (applying Rule 9(b) to an unjust enrichment claim

"sound[ing] in fraud").  Thus, as to each cause of action, Standard must plead the elements of the

relevant claim with particularity.  It has failed to do so.

In addition, Standard must "(1) specify the statements that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and

(4) explain why the statements were fraudulent."  *Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp.

2d 509, 515 (W.D.N.Y. 2007) (internal quotation omitted).  The SAC does not satisfy these

requirements.  For instance, Standard generically refers to misrepresentations without identifying

which (if any) defendant made the alleged misrepresentation. *See, e.g.*, SAC ¶¶ 101-07 (alleging misstatements by "the FINRA Defendants"). This is insufficient to satisfy Rule 9(b). *See Tuosto v. Philip Morris USA Inc.*, 05 Civ. 9384 (PKL), 2007 WL 2398507, at *15 (S.D.N.Y. Aug. 21, 2007) (plaintiff "fail[ed] to plead negligent misrepresentation with the specificity demanded by Rule 9(b)" because, *inter alia*, he "fail[ed] to confirm the speaker"); *see also Steinman v. Levine*, Civ. A. 19107, 2002 WL 31761252, at *15 (Del. Ch. Nov. 27, 2002) (dismissing a claim for negligent misrepresentation because the plaintiff "simply lump[ed] all the Director Defendants together" without "identify[ing] specific acts of individual defendants"), *aff'd*, 822 A.2d 397 (Del. 2003).

> **B.    Standard Cannot Plead The Damages Or Causation Elements Of Its Fiduciary Duty And Misrepresentation Claims Because NASD Members Have No Claim To NASD's Assets.**

Standard's fiduciary duty and misrepresentation claims (Counts I–IV) rest on its repeated but unfounded assertion that NASD member firms have an entitlement to assets listed on NASD's balance sheet. *See, e.g.*, SAC ¶¶ 16(A)(5), 20, 25, 33–34, 59, 100, 127, 135. Indeed, Standard goes so far as to claim that a "wind-up would have triggered an *obligation* by NASD to pay the remaining Members' Equity to NASD Members." *Id.* ¶ 38 (emphasis added). This contention is incorrect as a matter of law and has already been rejected by this Court. As this Court emphasized, "the NASD's articles of incorporation clearly state that the 'NASD is not organized and shall not be conducted for profit, and *no part of its net revenues or earnings shall inure to the benefit of any* individual, subscriber, contributor, or *member*.'" *Standard*, 2007 WL 1296712, at *7 (emphases added); *see also* NASD Cert. of Incorporation art. IV.

The ban on private inurement in NASD's certificate of incorporation is no accident: It is compelled by federal law. Because NASD is a tax-exempt, not-for-profit organization, it is subject to the federal rule that "no part of [its] net earnings" may "inur[e] to the benefit of any

private shareholder or individual." 26 U.S.C. § 501(c)(6). Members pay a fee upon admission, and they pay annual dues, *see* NASD By-Laws art. VI, § 1, but they hold no stock or other equity interest in NASD, *see* NASD Cert. of Incorporation art. IV (providing that NASD "shall have no capital stock"). Under Delaware corporate law, "a member of a non-stock corporation has no vested right in such a membership." *Wier v. Howard Hughes Med. Inst.*, 407 A.2d 1051, 1054–55 (Del. Ch. 1979); *see also Farahpour v. DCX, Inc.*, 635 A.2d 894, 900 (Del. 1994) (same). Because Standard cannot claim an entitlement to NASD's assets, it cannot plead—let alone with particularity—the damages and causation elements of its purported state-law claims for breach of fiduciary duty and intentional or negligent misrepresentation.

### 1. Any Pecuniary Loss Was Not Caused By The Purported Misrepresentations.

Standard's allegations do not establish with particularity that any purported loss was caused by the alleged misrepresentations. To the contrary, the alleged misrepresentations cannot possibly have caused NASD to "wrongfully withh[o]ld" so-called members' equity—Standard's theory of damages, *see* SAC Prayer for Relief ¶ (d)—because NASD's certificate of incorporation, Delaware law, and the Internal Revenue Code all prohibit those assets from inuring to Standard's benefit. This is fatal to Standard's claims because, under Delaware law, there "must be [a] logica[l] and reasonabl[e]" relationship between compensatory damages and "the harm or injury" caused by a fiduciary breach, *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 773 (Del. 2006), and "pecuniary loss" from a negligent misrepresentation similarly must be "caused by justifiable reliance upon the false information," *Unisuper Ltd. v. News Corp.*, No. 1966-N, 2005 WL 3529317, at *9 (Del. Ch. Dec. 20, 2005).

Far from alleging causation, the SAC speculates—contrary to the multiple, overlapping bans on private inurement—that the alleged misstatements caused Standard's purported loss:

> [I]f the NASD *were to have dissolved*, its Members *could have received* well over $1 billion in Members' Equity and still provided the new entity (the New SRO) with a more than sufficient infusion of capital to effectively and faithfully achieve its regulatory purposes. . . . If the Transaction *had been structured* in accordance with the NYSE's [purported] understanding of the "term sheet," Members *may well have been entitled* to their equity, which was $1 billion . . . .

SAC ¶ 140, 144 (emphases added).

This series of allegations is devoid of any hint of but-for causation, much less proximate causation. Each allegation is couched in hypothetical terms, purporting to suggest what "could have" happened if NASD had elected to structure the transaction differently. But Standard never claims, for example, that NASD *would have* dissolved and distributed (in violation of federal law) some additional amount of money to its former members. Indeed, if the by-law amendments had been voted down and the regulatory consolidation therefore had not closed, there would have been *no* payment to NASD members. Standard's rank speculation to the contrary cannot satisfy its obligation to plead with particularity a pecuniary loss that was the "direct and proximate" result of the alleged misrepresentations. *Brzoska v. Olson*, 668 A.2d 1355, 1367 (Del. 1995).

## 2. Standard Was Not Damaged By The Alleged Misrepresentations.

Under Delaware law, a plaintiff can recover for breach of fiduciary duty or misrepresentation only if it can prove damages. *See In re J.P. Morgan Chase*, 906 A.2d at 773; *Unisuper*, 2005 WL 3529317, at *9. In particular, a plaintiff must have "suffered a pecuniary loss caused by justifiable reliance upon the false information." *Unisuper*, 2005 WL 3529317, at *9. Standard asserts that NASD could have paid more than $35,000 to each member, but—even assuming this allegation to be true—Standard did not suffer any damages from failing to receive a larger payment, for two reasons. *First*, as explained above, it had no entitlement to NASD's assets. *See Standard*, 2007 WL 1296712, at *7.

*Second*, Standard asserts that the source for the $35,000 per-member payment was the "members' equity" listed on NASD's balance sheet. *See*, *e.g.*, SAC ¶ 16(A)(2). But if NASD "wrongfully withheld" some portion of those assets, as Standard claims, *see* SAC Prayer for Relief ¶ (d), Standard's SAC establishes at most that NASD has not *yet* distributed those assets, but failing to distribute funds cannot create an actual pecuniary loss.

### C. The Misrepresentation Claim Must Be Dismissed Because Standard Does Not Plead That It Relied On Any Alleged Misrepresentations.

Standard could not possibly have relied on the alleged misrepresentations if it voted against the amendments or did not vote at all. *Cf. Grace v. Rosenstock*, 228 F.3d 40, 49–50 (2d Cir. 2000). The SAC does not allege, however, that Standard *actually voted* in favor of the by-law amendments. Because Standard has failed to allege this element of its claim, dismissal is required. *Unisuper*, 2005 WL 3529317, at *9; *see also*, *e.g.*, *In re Marsh & McClennan*, 501 F. Supp. 2d at 495 (dismissing misrepresentation claims for "failure to properly plead reliance").

Even if Standard had alleged that it voted in favor of the by-law amendments and that it relied on the alleged misrepresentations in doing so, its own conduct establishes that such reliance would have been unreasonable. After the member vote at issue, Standard joined a letter submitted by another NASD member, Benchmark Financial Services, that dismissed the disclosures in the proxy statement as "manifestly insufficient." *See* Siedle Letter, *supra* note 3, at 1. Standard's assertion that the flaws in the proxy statement were "manifes[t]" cannot be reconciled with any claim of *reasonable* reliance. *Unisuper*, 2005 WL 3529317, at *9. As a result, Standard's misrepresentation claim must be dismissed. *See Penn. Employee Benefit Trust Fund v. Zeneca, Inc.*, No. Civ. 05-075-SLR, 2005 WL 2993937, at *5 (D. Del. Nov. 8, 2005), *vacated on other grounds*, 129 S. Ct. 1578 (2009).

### D.    Standard Has Not Adequately Pleaded Its Claims For Breach Of Fiduciary Duty.

#### 1.    NASD's Officers And Directors Do Not Owe Any Fiduciary Duties To NASD Member Firms.

Standard's claims for breach of fiduciary duty (Counts I–III) make little sense in the context of an entity like NASD.  The regulatory consolidation between NASD and NYSE was not a standard corporate transaction, nor is NASD a typical for-profit corporation whose function is to maximize returns for its stockholders.  Rather, NASD is a not-for-profit corporation that has been charged by Congress with a unique role in regulating and supervising the securities industry "to protect investors and the public interest."  15 U.S.C. § 78*o*-3(b)(6).  Consistent with its federal responsibilities, NASD must enforce its rules against members, disciplining or even expelling any member that fails to comply with those rules, the Exchange Act, or the SEC's regulations.  *See id.* § 78*o*-3(b)(7).  The role Congress created for NASD forbids imposition on NASD's officers and directors of a fiduciary duty to the very members they must regulate and, if necessary, sanction.  *Cf. Sparta*, 159 F.3d at 1215 (noting that a rule "allow[ing] states to define by common law the regulatory duties of a self-regulatory organization . . . cannot co-exist with the Congressional scheme of delegated regulatory authority under the Exchange Act").

Even if federal law itself did not impose *any* limits on the types of fiduciary duties owed by NASD's officers and directors, it would be clear that such duties could not exist as a matter of Delaware law.  The Delaware Chancery Court recently emphasized, in a case involving another SRO, that "[f]or a fiduciary duty to be created, there must be both (1) a property or other equitable interest; and (2) the ceding of legal control over the property interest, such that the owner 'reposes special trust in and reliance on the judgment' of those in control."  *In re NYMEX S'holder Litig.*, Nos. 3621-VCN, 3835-VCN, 2009 WL 3206051, at *14 (Del. Ch. Sept. 30, 2009) (quoting *McMahon v. New Castle Assoc.*, 532 A.2d 601, 604 (Del. Ch. 1987)).  Neither

element is satisfied here.  This Court has already recognized that Standard lacks an equity

interest in NASD, *see Standard*, 2007 WL 1296712, at *7, and any purported interest would be

foreclosed by federal law, Delaware law, and NASD's certificate of incorporation.

Nor does Standard have a trust relationship with NASD's officers and directors—a point

illustrated by *Crosse v. BCBSD, Inc.*, in which the Delaware Supreme Court rejected the

argument that a "non-profit health insurance company" owed a fiduciary duty "to its plan

participants."  836 A.2d 492, 493 (Del. 2003).  The court reasoned that "the interests of the plan

participants and those of [the insurer] are not perfectly aligned" because, for instance, "the

decision to pay or not to pay a certain claim . . . may benefit" the insurer by reducing litigation

costs "while disadvantaging the individual plan participants" by resulting in higher premiums.

*Id.* at 495.  NASD's regulatory responsibilities undoubtedly impose costs on members that they

would prefer to avoid.  Similarly, when NASD must impose disciplinary sanctions, the

disciplined firms may well disagree with NASD's judgment.  This "clash of interests" (*id.*) is

unavoidable and precludes Standard's fiduciary-duty claims here.

## 2.      The Business Judgment Rule Bars Standard's Claims.

Applying the well-known business judgment rule, Delaware law presumes that "in

making a business decision the directors of a corporation acted on an informed basis, in good

faith and in the honest belief that the action taken was in the best interests of the company."

*Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984).  To overcome this presumption and survive a

motion to dismiss, a plaintiff must allege "well-pleaded facts," *In re Santa Fe Pac. Corp.

S'holder Litig.*, 669 A.2d 59, 71 (Del. 1995), showing with particularity that a *majority* of the

board was either interested in the challenged decision or breached their obligations of due care,

*Orman v. Cullman*, 794 A.2d 5, 22 (Del. Ch. 2002).  Even ignoring its failure to establish any

fiduciary duties, Standard has not come close to satisfying either requirement.

Standard's claims for breach of fiduciary duty challenge the regulatory consolidation and by-law amendments as poor decisions that allegedly were not in the best interests of NASD members.  SAC ¶¶ 159, 163, 166.  But during the relevant period, NASD's Board of Governors had sixteen members, of whom a majority were "public" or "non-industry" governors—*i.e.*, not affiliated with either NASD or any broker-dealer.  *See* Proxy Statement at 9; NASD By-Laws art. VII, § 4.15.  Therefore, to overcome the business judgment rule, Standard must at a minimum set forth well-pleaded, specific allegations that nine of the Board's members were interested in the regulatory consolidation or were dominated by an interested director.  *See Orman*, 794 A.2d at 22.  There are no such allegations in the complaint, which only mentions a mere two of the sixteen governors.[14]

Nor does Standard allege facts showing that the individual defendants were so irresponsible that they violated the duty of care.  Courts will not second-guess board decisions at a plaintiff's whim; rather, board action will be held inconsistent with the duty of care *only* if it involves "gross negligence."  *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 64 (Del. 2006).  The gross negligence standard assesses not the Board's substantive decision but rather the process by which the decision was made.  *See Brehm v. Eisner*, 746 A.2d 244, 264 (Del. 2000).  But Standard challenges the substance of the Board's decision, not its process.

Standard's allegations (*e.g.*, SAC ¶ 140) that the regulatory consolidation should have been structured differently, or that the Board should have done more to investigate alternative

---

[14]  The complaint makes only vague and conclusory allegations that even one of these governors might have had a financial interest in the regulatory consolidation, let alone a material one.  *See* SAC ¶¶ 35, 44–50, 138.  In any event, the approval by the Board's disinterested majority is fatal to any assertion that these governors breached any duty of loyalty.  *See In re Wheelabrator Techs., Inc. S'holders Litig.*, 663 A.2d 1194, 1205 n.8 (Del. Ch. 1995).

structures, fail to rebut the business judgment rule.[15]  There is no legal requirement under *any* applicable law to investigate alternative transactions or structures for a transaction, *Barkan v. Amsted Indus., Inc.*, 567 A.2d 1279, 1287 (Del. 1989), particularly where, as here, the regulatory consolidation was negotiated at arm's length without a controlling stockholder on either side, *Oberly v. Kirby*, 592 A.2d 445, 472 (Del. 1991).  Even in the context of suits by corporate shareholders, which (unlike this case) involve *actual* ownership interests, "arms-length transactions approved by majority independent boards and a diverse stockholder base . . . are the quintessential transactions subject to the protection of the business judgment rule."  *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 173 (Del. Ch. 2006).

### E.    Standard Has Failed To Allege Any Unjust Enrichment At Its Expense.

"Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity or good conscience."  *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999) (internal quotation marks omitted).  To make out an unjust enrichment claim, the complaint must identify not only an unjustified enrichment, but also an impoverishment traceable to that enrichment.  *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1056 (Del. Super. 2001).

Standard's allegations that NASD officers received higher salaries as a result of the transaction (SAC ¶ 15) and its conclusory assertion in Count VII that these officers "have been unjustly enriched" (*id.* ¶ 179) are insufficient to plead that any enrichment was "unjust."  *See*

---

[15]  To the extent the SAC raises a "duty under Delaware law to disclose all material facts," SAC ¶ 157, the Chancery Court has emphasized that "[t]he fiduciary duty of disclosure is a specific application of the duties of care and loyalty" and therefore that claimed violations of this duty of disclosure fail where, as here, the plaintiff has neither alleged that a majority of the board was interested nor overcome the business-judgment rule, *see NYMEX S'holder Litig.*, 2009 WL 3206051, at *12.

*Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

Nor has Standard alleged that any enrichment occurred *at its expense*.  *See Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999) (on an unjust enrichment claim, the defendant is enriched "at the expense of the plaintiff").  As explained above, Standard has no claim to NASD's assets, and therefore no salary paid to NASD's officers from NASD's assets resulted in an "impoverishment" for Standard.  *Jackson*, 741 A.2d at 393.

## CONCLUSION

For all the foregoing reasons, the second amended complaint should be dismissed.

Dated:  November 3, 2009                    Respectfully submitted,


                                            By:   s/ Douglas R. Cox
John J. Flood (JF-2197)                     Douglas R. Cox (DC-1962)
FINANCIAL INDUSTRY REGULATORY                 *Counsel of Record*
    AUTHORITY, INC.                         F. Joseph Warin
1735 K Street, N.W.                         Howard S. Hogan
Washington, D.C.  20006                     GIBSON, DUNN & CRUTCHER LLP
                                            1050 Connecticut Avenue, N.W.
Srinivas M. Raju                            Washington, D.C.  20036
RICHARDS, LAYTON & FINGER, P.A.             Telephone: (202) 955-8500
One Rodney Square                           Fax: (202) 467-0539
920 North King Street
Wilmington, DE  19801                       Jennifer H. Rearden
                                            GIBSON, DUNN & CRUTCHER LLP
                                            200 Park Avenue
                                            New York, NY  10166

        *Attorneys for Defendants Financial Industry Regulatory Authority, Inc.,*
            *Schapiro, Brueckner, Callery, Diganci, and Schloss*